Joshua SCHEIDELER, Jason Scheideler, Andrea Scheideler and Dustin Scheideler, by their Guardian Ad Litem, Jerome P. Tlusty, and Daniel Scheideler and Rebecca Scheideler, Plaintiffs,

v.

SMITH & ASSOCIATES, INC., Edward J. Smith, Smith Insurance Center, Inc., and Employers Reinsurance Corporation, Defendants-Respondents.

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant-Appellant.†

Court of Appeals

*No. 96–0319. Oral argument October 16, 1996.—Decided November 14, 1996.*

(Also reported in 557 N.W.2d 445.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Douglas J. Klingberg* and *Matthew E. Yde* of *Ruder, Ware & Michler, S.C.* of Wausau.

For the defendants-respondents the cause was submitted on the brief of *Bruce A. Olson* of *Olson & Nesemann* of Appleton.

Before Eich, C.J., Vergeront and Roggensack, JJ.

VERGERONT, J.   This appeal concerns the effect of a partial settlement agreement between insureds and their automobile insurance carrier on the insureds' claims against the insurance agent. The Scheideler family had underinsured motorist (UIM) coverage under their policy with General Casualty Company of Wisconsin until their agent, the Smith Agency, mistakenly deleted that coverage. When General Casualty denied the Scheidelers' claim for UIM benefits, the Scheidelers sued General Casualty and the Smith Agency.[1] General Casualty then entered into a partial settlement agreement with the Scheidelers paying them $200,000 in exchange for a dismissal of all claims against General Casualty except a bad faith claim, a covenant not to sue except on the bad faith claim, and an assignment to General Casualty of the Scheidelers' claims against the Smith Agency.

The trial court held that the assignment provided General Casualty with no claims against the Smith Agency and granted summary judgment to the Smith Agency. We affirm. We conclude that upon the

---

[1] The Scheidelers sued Smith & Associates, Inc.; Edward Smith; Smith Insurance Center, Inc.; and their errors and omissions carrier, Employers Reinsurance Corporation. These defendants are collectively referred to as "the Smith Agency."

Scheidelers' receipt of $200,000—the most they would have been entitled to had their policy not been mistakenly modified—they no longer had any claims for relief against the Smith Agency and therefore had nothing to assign to General Casualty.

## BACKGROUND

The Scheidelers' 1984 Nissan Sentra and another vehicle were insured with General Casualty through the Smith Agency. Both vehicles had liability, property damage, medical payments, uninsured motorist and UIM coverage. On September 30, 1990, the Scheidelers' contacted an employee of the Smith Agency and asked that the comprehensive and collision coverage be removed for the 1984 Nissan Sentra. The Smith Agency employee who processed that information mistakenly requested just the opposite, forwarding a change notice to General Casualty requesting that all coverage be deleted under the policy *except* comprehensive and collision. General Casualty changed the policy accordingly. The Smith Agency had an agency agreement with General Casualty.

Rebecca Scheideler and her four children were involved in a serious accident on March 3, 1992, when she was driving the 1984 Nissan Sentra. Because the insurance of the other driver was not sufficient to cover all the damages, the Scheidelers made a claim for UIM benefits under their General Casualty policy. General Casualty denied the claim, stating that the policy did not provide UIM coverage for the 1984 Nissan Sentra.

The Scheidelers filed suit, asserting a claim of negligence against the Smith Agency and claims of negligence, breach of contract, reformation and bad faith against General Casualty. General Casualty and the Smith Agency filed cross-claims against each other

for contribution or indemnification. The Scheidelers moved for summary judgment on their claim of reformation and a hearing was set for June 20, 1995. The Smith Agency also moved for summary judgment. It contended that reformation of the insurance policy was appropriate and, therefore, General Casualty was not entitled to indemnification or contribution from the Smith Agency except for $324 in lost premiums. The Smith Agency also argued that, with reformation of the contract, the Scheidelers had no claims against the Smith Agency. The hearing on the Smith Agency's motion was also set for June 20, 1995.

After the Smith Agency filed its motion for summary judgment but before the June 20 hearing, General Casualty entered into an agreement with the Scheidelers entitled "Partial Settlement Agreement."[2] This agreement stated that it was a settlement of the negligence, breach of contract, and reformation claims against General Casualty, "recognizing the expense and uncertainty inherent in litigation." The Scheidelers agreed to dismiss these three claims without prejudice and not to sue General Casualty for any claims arising out of the accident of March 3, 1992, except that they specifically retained the right to proceed on their claim for bad faith. The Scheidelers assigned to General Casualty all claims they had against the Smith Agency. General Casualty agreed to pay the Scheidelers $200,000 upon the court's approval of the settlement. Based on the assignment, General

---

[2] This document is not contained in the record but a copy is in the appendix to General Casualty's brief. It is clear the trial court had this agreement before it. The Smith Agency discusses the agreement in its responsive brief without objecting to its absence in the record. We therefore choose to consider the agreement.

Casualty moved for summary judgment on two claims against the Smith Agency—the negligence claim already alleged in the Scheidelers' amended complaint and a breach of contract claim which General Casualty sought permission to add.

In its written decision, the trial court determined that there was no dispute that the Smith Agency was acting as General Casualty's agent. The court reasoned that the Scheidelers had obtained full relief from General Casualty upon receipt of $200,000 and therefore had no claim for relief against the Smith Agency to assign to General Casualty.[3] The trial court therefore denied General Casualty's request to add a contract claim against the Smith Agency and denied General Casualty's motion for summary judgment against the agency, except as to lost premiums. The court granted the Smith Agency's motion for summary judgment, except for premiums owed to General Casualty, and dismissed the negligence claim against the agency—the only claim against the Smith Agency in the Scheidelers' amended complaint. Based on the settlement agreement, the court dismissed all of the Scheidelers' claims against General Casualty except the bad faith claim.

The court did not address the issue of reformation because that claim against General Casualty had been dismissed by agreement. The court was aware that the issue of reformation was pertinent to the bad faith claim, still to be tried, but considered that an opinion

---

[3] The court also stated that a covenant not to sue the principal—General Casualty—is a covenant not to sue its agent—the Smith Agency. General Casualty argues that this is error. It is not necessary to address this issue because we affirm the trial court's decision for other reasons.

on reformation at that stage of the proceedings would be advisory only and not appropriate.

## DISCUSSION

Before setting out the parties' positions, we begin with a discussion of the claims for relief available to an insured when an insurance agent makes a mistake such as that made by the Smith Agency. The insured may seek reformation of the policy to correct a mistake. *Trible v. Tower Ins. Co.*, 43 Wis. 2d 172, 182, 168 N.W.2d 148, 154 (1969). Reformation is allowed based on mutual mistake. *Id.* In the insurance context, a mistake is considered mutual when the insured makes statements to an agent concerning coverage and the agent understands but by mistake causes a policy to be issued that does not contain the requested coverage. *Id.* Even though the agent made the mistake, if the agent is an authorized agent of the insurer, the mistake is attributable to the insurer for purposes of reforming the policy. *Id.* at 181, 168 N.W.2d at 153. *See also* § 628.40, STATS. A claim for reformation is a claim against the insurer, and, once the policy is reformed, the insurer must provide the coverage under the reformed policy.[4] *See Id.* at 184, 168 N.W.2d at 155.

---

[4] Although the complaint contained two other claims against General Casualty (besides the reformation claim and the bad faith claim), those two claims do not add anything of significance for purposes of this discussion. The breach of contract claim against General Casualty assumes the coverage that the Scheidelers requested and so is an alternative to the reformation claim. The negligence claim against General Casualty appears to be based solely on its liability for the negligence of the Smith Agency and not on any independent negligent conduct of General Casualty.

Alternatively, an insured may sue the insurance agent for negligence and for breach of contract for failing to obtain the insurance requested. *Estate of Ensz*, 66 Wis. 2d 193, 199, 223 N.W.2d 903, 907 (1974). Although an insured may initially pursue both a reformation claim against the insurer and claims against the agent as alternate theories of recovery, the insured may not recover against the agent if the insured obtains a judgment against the insurer under the reformed policy. *Trible*, 43 Wis. 2d at 184-85, 168 N.W.2d at 155. Similarly, if the insured recovers for the agent's failure to procure the coverage requested, the insured cannot also recover from the insurance company under the reformed policy. *See Hause v. Schesel*, 42 Wis. 2d 628, 636, 167 N.W.2d 421, 425 (1969).

Against this background, General Casualty argues that because the policy was not reformed by the court, the Scheidelers still had alternative remedies available to them and were free to settle their claims against General Casualty and assign their claims against the Smith Agency. According to General Casualty, the amount paid to the Scheidelers for the assignment—in particular, the fact that it is the maximum the Scheidelers could recover from either General Casualty or the Smith Agency or the two combined—is of no significance and should not, in effect, reduce the amount General Casualty can recover on the assigned claims. The Smith Agency responds that the effect of General Casualty's position is to permit a double recovery, precisely what *Trible* says may not happen. Because the pertinent facts are undisputed, the legal effect of the partial settlement agreement presents a question of law, which we review de novo. *See Unigard*

*Ins. Co. v. Insurance Co. of North America*, 184 Wis. 2d 78, 82, 516 N.W.2d 762, 764 (Ct. App. 1994).

General Casualty relies on *Appleton Chinese Foods v. Murken Ins., Inc.*, 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994). In that case we rejected an insurance agent's argument that, because the insured had already settled with and released the insurer, the agent could not be found independently liable in contract and tort for failing to procure the requested insurance coverage. *Id.* at 803-04, 519 N.W.2d at 677-78. The insured had received $2,000 in settlement with the insurer. *Id.* at 807, 519 N.W.2d at 679. In a trial to the bench on the claims against the agent, the court determined that the damages, measured by the difference in the replacement cost coverage requested by the insured and the actual cash value coverage the agent mistakenly obtained, was in excess of $100,000. *Id.* The agent argued that settlement with the insurer constituted an election of remedies and the insured could not then recover against the agent.

We rejected the agent's argument because we concluded there was no chance that the insured would be unjustly enriched by a double recovery, given the difference between the damages and the amount of the settlement with the insurer. We said in a footnote:

> Other courts have suggested that a plaintiff's settlement with an insurer will only be an election of remedies bar in a subsequent action against the agent where the plaintiffs recovered most or more than their claim in the settlement. (Citation omitted.)

*Id.* at 807 n.7, 519 N.W.2d at 679.

In our view, *Appleton Chinese Foods* supports the position of the Smith Agency and the trial court, not

488

that of General Casualty. Under *Appleton Chinese Foods*, the amount the insured receives in settlement with the insurer is pertinent to whether the settlement constitutes an election of remedies. Applying our reasoning in *Appleton Chinese Foods* to this case, we hold that the Scheidelers' receipt in their settlement with General Casualty of the maximum amount they were entitled to recover constitutes an election of remedies that bars them from pursuing their claims against the Smith Agency. Were the Scheidelers permitted to pursue their claims against the Smith Agency, the result would clearly be a double recovery to the Scheidelers.

General Casualty considers it significant that in this case the Scheidelers will not have a double recovery because they have assigned their claims against the Smith Agency to General Casualty. General Casualty reasons that if it recovers $200,000 against the Smith Agency, the effect on the Scheidelers is no different than if the Smith Agency, rather than General Casualty, had paid the $200,000 to the Scheidelers directly. The Scheidelers still only receive one full recovery. That is true, but it ignores the threshold question: if the receipt by Scheidelers of the full amount of recovery from General Casualty constitutes an election of remedies by them and bars them from pursuing their claims against the Smith Agency, how can those barred claims become viable simply by assigning them to another?

General Casualty does not answer this question directly but instead argues that, for equitable reasons, it ought to be subrogated to the rights of the Scheidelers against the Smith Agency because of its payment to the Scheidelers. According to General Casualty, equity favors placing the loss on the Smith Agency, the party that made the mistake. This argu-

ment is not persuasive because it is inconsistent with the established principles of liability applicable among the insurer, the agent and the insured in a situation such as this.

As we stated above, the Scheidelers could have chosen to pursue their reformation claim against General Casualty without seeking any recovery from the Smith Agency. Had the court decided the Scheidelers' motion for summary judgment on reformation in their favor, General Casualty would have had to pay the UIM benefits due under the reformed policy. In that situation, General Casualty could not have recovered its payment to the Scheidelers from the Smith Agency. This is clear from *Peterman v. Midwestern Nat'l Ins. Co.*, 177 Wis. 2d 682, 705-06, 503 N.W.2d 312, 321-22 (Ct. App. 1993). In *Peterman* we held that where the insurer would have provided the coverage requested by the insured had the agent not made a mistake, the insurer is not entitled to indemnification from the agent for that amount. We reasoned that in this situation the agent's negligence is not the cause of any "loss" to the insurer because the insurer would have had to pay the same amount to the insured had the agent properly handled the insured's request for coverage.[5] *Id.*

General Casualty concedes that it would have provided UIM coverage to the Scheidelers had the agency not requested deletion and had they paid the premium.

---

[5] The Smith Agency does not challenge the trial court's determination that it is liable to General Casualty for lost premiums—i.e., the difference between the premiums the Scheidelers would have paid had the agency correctly conveyed their request for a change in coverage and the premiums they actually paid. That "loss" to General Casualty is not an issue on this appeal.

General Casualty therefore would not have been entitled to recovery from the Smith Agency for UIM coverage had the policy been reformed. That being so, we fail to see why equity favors General Casualty's recovery from the agency simply because General Casualty chose to settle the reformation claim with the Scheidelers before the court ruled on it. Whether General Casualty pays before or after the court makes a determination on reformation, the Smith Agency's mistake did not cause General Casualty to provide more coverage to the Scheidelers than it would have provided had the agency not made a mistake. Our reasoning in *Peterman* compels the conclusion that equity does not require permitting General Casualty to recover the equivalent of the UIM coverage from the Smith Agency.[6]

General Casualty also argues that the trial court's decision, in effect, reduces the amount it can recover on the assigned claims by the amount it paid for the assignment. This is error, General Casualty contends, pointing to cases involving assignments of claims in other contexts where the amount paid for the assignment did not reduce the amount the assignee could recover on the assigned claims. *See, e.g., Newhouse v. Citizens Sec. Mut. Ins. Co.*, 170 Wis. 2d 456, 489 N.W.2d 639, *aff'd in part, rev'd in part,* 176 Wis. 2d 824,

---

[6] General Casualty argues that an Iowa case, *Israel v. Farmers Mut. Ins. Ass'n of Iowa*, 339 N.W.2d 143 (Iowa 1983), provides support for its equitable argument. The court in *Israel* expressly rejected the agent's argument that, since the insurer would have provided the coverage requested had there been no mistake, the insurer did not sustain a loss (except for the difference in premiums) due to the agent's negligence. *Israel* is in direct conflict with *Peterman*, which is binding. *See In re Court of Appeals*, 82 Wis. 2d 369, 371, 263 N.W.2d 149, 149-50 (1978).

501 N.W.2d 1 (1993) (alleged tortfeasor assigned to injured party claims against tortfeasor's insurer for bad faith and breach of duty to defend; amount paid for assignment apparently not deducted from injured party's recovery). At most, General Casualty contends, the amount paid for the assignment is a cap on what General Casualty can recover on the assigned claims, citing *D'Angelo v. Cornell Paperboard Products Co.*, 19 Wis. 2d 390, 399, 120 N.W.2d 70, 75 (1963) (assignment to alleged tortfeasor's general liability carrier of claims belonging to injured party is limited on public policy grounds to recovery of no more than assignee paid for assignment).

These cases are not helpful. They do not address assignment in an election-of-remedies context and therefore shed no light on the critical issue here: whether the Scheidelers had any claims against the Smith Agency to assign upon receipt of $200,000 from General Casualty. General Casualty's characterization of the $200,000 as consideration for the assignment, having nothing to do with the Scheidelers' reformation claim against General Casualty, is not convincing. The stated purpose of the agreement was to settle the Scheidelers' claims against General Casualty, except for the bad faith claim.

In summary, we hold that the Scheidelers' receipt from General Casualty of the maximum amount they could recover on all their claims for relief (except bad faith) constituted an election of remedies and barred the Scheidelers from pursuing their claims against the Smith Agency. Because the Scheidelers were barred from pursing their claims against the agency, they had no claims against the agency to assign to General Casualty. And because General Casualty would have

provided the UIM coverage had the agency not made a mistake, General Casualty is not entitled to recover from the agency the amount it paid the Scheidelers. The trial court properly denied General Casualty's motion to add a claim against the Smith Agency based on the assignment and properly granted summary judgment to the agency.

*By the Court.*—Judgment affirmed.