Robert F. ZUBEK and Kristine A. Zubek, Plaintiffs-
Appellants,

v.

Herbert E. EDLUND, Associated Policywriters, Ltd.,
Heritage Mutual Insurance Company and St. Paul
Fire & Marine Insurance Company, Defendants-
Respondents.

Court of Appeals

*No. 97–2197. Submitted on briefs November 3, 1998.—Decided
June 15, 1999.*

(Also reported in 598 N.W.2d 273.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David C. Bangert* of *First, Blondis, Albrecht, Bangert & Novotnak,* of Milwaukee.

On behalf of the defendant-respondent Herbert E. Edlund, Associated Policywriters, Ltd., the cause was submitted on the brief of *Susan R. Tyndall* of *Hinshaw & Culbertson,* of Milwaukee.

On behalf of the defendant-respondent Heritage Mutual Insurance Company, the cause was submitted on the brief of *Arthur P. Simpson,* of *Simpson & Deardorff,* of Milwaukee.

On behalf of the defendant respondent St. Paul Fire & Marine Insurance Company, the cause was submitted on the brief of *Michael J. Hogan* and *Mary L. Richards*, of *Hogan, Ritter, Minix & Pasholk*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J. Robert F. Zubek and Kristine A. Zubek appeal from the trial court's judgments granting summary judgment and dismissing their complaint against their auto insurer, Heritage Mutual Insurance Company (Heritage), their insurance agent, Herbert E. Edlund, an authorized agent of Associated Policywriters, Ltd., (collectively, "Edlund"), and Edlund's errors and omissions insurer, St. Paul Fire & Marine Insurance Company (St. Paul). The Zubeks argue that the trial court erred in concluding that their action was barred under the doctrine of "accord and satisfaction." With respect to Heritage, we conclude that the trial court correctly granted summary judgment. With respect to Edlund and St. Paul, we conclude that the trial court erred. Accordingly, we affirm, in part, and reverse, in part.

## I. BACKGROUND

The Zubeks owned a customized 1979 Chevrolet Silverado pickup truck with an appraised value of $27,895. Through Edlund, their insurance agent, they insured the truck with Heritage. After the truck was severely damaged in an accident on October 20, 1990, Heritage determined that its policy covered collision damage at actual cash value less a $250 deductible, and that the policy excluded additional coverage in excess of $500 for any increased cost of repair or

replacement due to customizing. Therefore, maintaining that the Zubeks had never requested or intended that the truck be insured as a "custom vehicle," Heritage tendered a check to the Zubeks for $2,723.77.

The Zubeks disputed Heritage's coverage determination, asserting that their truck should have been insured for $30,000, and that Heritage should have paid for its full repair, including all customized items. Ultimately, however, the Zubeks accepted the Heritage check, the back of which stated: "ENDORSEMENT OF THIS DRAFT CONSTITUTES A COMPLETE RELEASE AND SETTLEMENT OF THE CLAIM OR ACCOUNT STATED ON THE FACE HEREOF." The face of the check stated: "IN PAYMENT OF collision loss." Kristine Zubek (then known as Kristine A. Maci) endorsed the check and deposited it on December 28, 1990.

Almost six years later, the Zubeks brought the action leading to this appeal. They alleged: (1) that Edlund was negligent in failing to procure the proper insurance coverage for their truck (and that St. Paul also was liable by virtue of its policy insuring Edlund for negligence); and (2) that Heritage still was liable for full value coverage because reformation of the insurance contract, providing the coverage they say they requested, was required.

Heritage pled the affirmative defense of "accord and satisfaction"; Edlund and St. Paul did not. Edlund and St. Paul did, however, assert that the Zubeks' action "must be dismissed pursuant to the doctrine of election of remedies in that [the Zubeks] have accepted a settlement of the claim from the underlying insurer." Subsequently, once they learned of the Zubeks' acceptance of the Heritage check, Edlund, by motion for summary judgment, and St. Paul, by letter joining in

Edlund's motion, also invoked the defense of "accord and satisfaction."[1]

Granting summary judgment, the trial court concluded that, under the doctrine of "accord and satisfaction," the propriety of summary judgment for Heritage was "exceedingly clear." The trial court also granted summary judgment to Edlund and St. Paul, but commented that the fact that the Zubeks' "apparent silence and inaction after cashing that check went for five years" was "exceedingly critical in its decision," and "were it not for that length of time between the cashing of the check and today, [it] might have ruled otherwise."[2]

## II. ANALYSIS

■

The methodology and standards establishing our *de novo* review of a trial court's grant or denial of summary judgment have been repeated many times and

---

[1] The parties debate whether Edlund and St. Paul waived the defense of accord and satisfaction by not pleading it initially. The Zubeks, however, offer no reply to the Edlund/St. Paul argument that, as stated in *Lentz v. Young*, 195 Wis. 2d 457, 467, 536 N.W.2d 451, 455 (Ct. App. 1995), "a defendant may raise an affirmative defense by motion" even when not specifically pled. Because we conclude that the Zubeks are correct in arguing that their settlement with Heritage did not bar their action against Edlund and St. Paul, we need not resolve whether Edlund and St. Paul were required to interpose their "accord and satisfaction" defense by pleading rather than by motion.

[2] Although, before the trial court, St. Paul, Heritage, and Edlund raised a statute of limitations defense, on appeal, none of the respondents has argued that the trial court should be affirmed based on its "length of time" rationale.

need not be restated here. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816, 820–21 (1987). Whether, on a set of undisputed facts, the doctrine of "accord and satisfaction" provides the basis for summary judgment, presents an issue of law. *See Scheideler v. Smith & Assocs., Inc.*, 206 Wis. 2d 480, 487, 557 N.W.2d 445, 448 (Ct. App. 1996). We review issues of law *de novo. See id.*

## A. Accord and Satisfaction

The Zubeks do not challenge the trial court's conclusion that, but for their theory of contract reformation, "accord and satisfaction" would require dismissal of their action *against Heritage*. They argue, however, that, under *Appleton Chinese Food Service, Inc. v. Murken Insurance, Inc.*, 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994), "accord and satisfaction" does not allow for dismissal of their action *against Edlund and St. Paul*. The Zubeks are correct.

In *Appleton Chinese Food*, the plaintiffs owned a restaurant and the building in which it was located. *See id.* at 796, 519 N.W.2d at 675. When the building was destroyed by fire, the plaintiffs discovered that their insurance policy provided actual cash value coverage, but did not provide their requested replacement cost or lost business coverage. *See id.* They sued their insurance agent and its errors and omissions carrier. *See id.* at 797, 519 N.W.2d at 675. Among other issues, we had to determine "whether plaintiffs' release of [their insurer] released [their insurance agent] from liability" for allegedly "failing to procure the proper coverage." *Id.* Rejecting the agent's argument "that it cannot be independently liable for failing to procure the requested coverage," *id.* at 803, 519 N.W.2d at

677–78, we held that "even where an insured has settled and released an insurer, the agent may remain personally liable in tort to the insured for failing to procure the proper insurance," *id.* at 804, 519 N.W.2d at 678.

To a significant degree, the facts of *Appleton Chinese Food* correspond to those of the instant case. Accordingly, we conclude that *Appleton Chinese Food* controls and, therefore, the "accord and satisfaction" established by the Zubeks' acceptance of the Heritage settlement did not preclude their action against Edlund and St. Paul.[3]

## B. Reformation of Contract

Notwithstanding the "accord and satisfaction" otherwise established by their acceptance of the Heritage check, the Zubeks argue that reformation of their insurance contract is required and that *Heritage* also would still be liable for the additional coverage under the reformed contract. Relying on *Trible v. Tower*

---

[3] Edlund argues that "commentators note that discharge of one joint debtor by accord and satisfaction discharges the other joint debtors," and, in a somewhat similar vein, St. Paul attempts to distinguish *Appleton Chinese Food Service, Inc. v. Murken Insurance, Inc.*, 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994) by noting that *Appleton Chinese Food* involved a *Pierringer* release specifically preserving claims against other parties. As the Zubeks reply, however, even if we agree with the argument that their acceptance of the Heritage check constituted "accord and satisfaction," it did so, according to the terms of the check, "in payment of collision loss." As we have explained, however, under *Appleton Chinese Food*, that "payment of collision loss" by Heritage still remains independent of the Zubeks' tort claim against Edlund and St. Paul.

*Insurance Co.*, 43 Wis. 2d 172, 168 N.W.2d 148 (1969), they maintain:

> Reformation is an equitable remedy available to an insured when an insurance agent makes a mistake such as the Zubeks allege that Edlund made. *The insured may seek reformation of the policy to correct the mistake.* Reformation is allowed based on mutual mistake. The *Trible* court points out that in the insurance context, a mistake is considered mutual when the insured makes statements to an agent concerning coverage and the agent understands but by mistake causes a policy to be issued that does not contain the requested coverage. *Even though the agent made the mistake, if the agent is an authorized agent of the insurer, the mistake is attributable to the insurer for purposes of reforming the policy. A claim for reformation is a claim against the insurer, and, once the policy is reformed, the insurer must provide the coverage under the reformed policy.*

(Emphasis added; citations omitted.)

The Zubeks' reliance on *Trible* is appropriate—but only to the extent that *Trible* stands for the proposition that if "the insurance agency was acting within its express authority in taking the application for insurance from the plaintiff, the mistake of the agency is attributable to the insurance company." *Id.* at 182, 168 N.W.2d at 153. *Trible*, however, says absolutely nothing about a separate issue: whether an insurance company, after reaching an unconditional settlement with an insured, still can be liable for additional coverage, under a contract reformation theory, if, in subsequent litigation, the insured succeeds in a claim against an *insurance agent* for failing to procure the

requested coverage.[4] Although Wisconsin case law has not yet ironed out this new wrinkle, our recent decision in *Scheideler*, together with established principles embodied in the doctrine of "accord and satisfaction," provide clear guidance.

In *Scheideler*, we considered "the effect of a partial settlement agreement between insureds and their automobile insurance carrier on the insureds' claims against the insurance agent" who had "mistakenly deleted [underinsured motorist coverage under their policy]." *Scheideler*, 206 Wis. 2d at 482, 557 N.W.2d at 446. We began our analysis "with a discussion of the claims for relief available to an insured when an insurance agent makes a mistake," *id.* at 486, 557 N.W.2d at 447, and explained:

> The insured may seek reformation of the policy to correct a mistake. . . . Even though the agent made the mistake, if the agent is an authorized agent of the insurer, the mistake is attributable to the insurer for purposes of reforming the policy. A claim for reformation is a claim against the insurer, and, once the policy is reformed, the insurer must provide the coverage under the reformed policy.
>
> Alternatively, an insured may sue the insurance agent for negligence and for breach of contract

---

[4] We emphasize that, for purposes of appeal in this case, the settlement was unconditional. The Zubeks' affidavits maintained that Kristine had been informed by a Heritage employee that the check for $2,723.77 was only for the "base" value, not the customized value, and that she and her husband accepted the check "assuming . . . that we would receive additional payment at such time as the customized value was established." On appeal, however, the Zubeks do not even refer to these assertions or contend in any way that they establish a material factual issue.

for failing to obtain the insurance requested. Although an insured may initially pursue both a reformation claim against the insurer and claims against the agent as alternate theories of recovery, the insured may not recover against the agent if the insured obtains a judgment against the insurer under the reformed policy. *Similarly, if the insured recovers for the agent's failure to procure the coverage requested, the insured cannot also recover from the insurance company under the reformed policy.*

*Id.* at 486–87, 557 N.W.2d at 447–48 (citations and footnote omitted; emphasis added). Here, in their action against Edlund, if the Zubeks succeed in "procur[ing] the coverage requested" under their negligence theory (thus producing what, in effect, they might then view as "the reformed policy"), they would not, under *Scheideler,* be allowed an additional recovery against Heritage who had already settled the dispute with them.

"An 'accord and satisfaction' is an agreement to discharge an existing disputed claim, whether the claim be one arising in contract, tort, or otherwise." *Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214, 217 (1979). Further, as the supreme court has explained:

> The common law rule that acceptance of a full payment check is an accord and satisfaction discharging the entire debt is a long-standing doctrine resting not only on principles of contract law but on principles of sound public policy, that is, interests of resolving disputes informally without litigation[,] and of fairness. Use of the full payment check by parties bargaining at arm's length is a convenient and valuable way of resolution of dispute through agreement of the parties. The interests of fairness dictate that a creditor who cashes a check offered in

full payment should be bound by the terms of the offer. The debtor's intent is known, and allowing the creditor to keep the money disregarding the debtor's conditions seems unfair and violative of the obligation of good faith . . . .

*Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis. 2d 95, 110–11, 341 N.W.2d 655, 663 (1984).

■

Here, it is undisputed that the Zubeks and Heritage disagreed on the determination of insurance coverage but that, ultimately, the Zubeks accepted the Heritage check. It is undisputed that the terms of the Heritage check were as clear and unequivocal as the check deemed to establish "accord and satisfaction" in *Flambeau Products*. The Heritage check provided that endorsement "constitutes a complete release and settlement." In *Flambeau Products*, the check provided that it was "in full payment of liability." *Flambeau Products*, 116 Wis. 2d at 99, 341 N.W.2d at 658. The Zubeks offer no authority that would somehow carve out an exception to the doctrine of "accord and satisfaction" by virtue of subsequent contract reformation sought through subsequent litigation. Indeed, such an exception would vitiate much of the strength of the "accord and satisfaction" doctrine.

## III. CONCLUSION

Accordingly, we affirm the trial court's summary judgment dismissing the Zubeks' claim against Heritage, but we reverse the summary judgment dismissing their claim against Edlund and St. Paul.

*By the Court.*—Judgments affirmed in part and reversed in part.