Rainald SCHURMANN, Plaintiff-Appellant,

v.

Guy NEAU and Employers Reinsurance Corporation,
Defendants-Respondents.†

Court of Appeals

*No. 00–0332. Submitted on briefs September 12,
2000.—Decided December 21, 2000.*

2001 WI App 4

(Also reported in 624 N.W.2d 157.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Cynthia A. Curtes* of *Kramer, Ott, Curtes & Rooney, S.C.* of Mount Horeb.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James J. Jacobson* and *Daniel C. Conway* of *Jacobson & Ratzel* of Brookfield.

Before Roggensack and Dillon,[1] JJ., and William Eich, Reserve Judge.

¶ 1.   ROGGENSACK, J.   Rainald Schurmann appeals a judgment dismissing his claims for misrepresentation against Guy Neau, an independent insurance agent, from whom he purchased a disability insurance policy that Schurmann claims did not provide the level of insurance he had requested and Neau said had been approved by the Franklin Life Insurance Company. Because we conclude that material issues of fact exist which, if proved, would entitle Schurmann to relief, we reverse the circuit court's summary judgment dismissing the amended complaint, and we remand for a trial on the merits.

## BACKGROUND

¶ 2.   Schurmann attempted to purchase disability insurance that would provide $4,000 per month of income continuation in the event of his total disability. To do so, he met with Neau, an insurance agent, to discuss his insurance needs. Schurmann, who was self-employed as a dental appliance technician, stated his interest in obtaining an increase in the disability insurance coverage he currently had. According to Schurmann, after Neau reviewed a financial statement Schurmann provided from his accountant, Neau said that Schurmann should qualify for $4,000 to $6,000 per month disability insurance, which would be in excess of any social security and other payments Schurmann might be entitled to receive in the event of his total disability. Neau completed an application to Franklin for disability insurance coverage in the amount of

---

[1] Circuit Judge Daniel T. Dillon is sitting by special assignment pursuant to the Judicial Exchange Program.

$4,000 per month to age sixty-five, and Schurmann signed it. At the time of the application, Schurmann gave Neau a check for the first premium payment. Later, again according to Schurmann, Neau told him that his application had been approved by Franklin and he would receive a policy which would provide $4,000 per month income for total disability. Franklin did issue a policy, effective January 1, 1995, that stated that the monthly payment for total disability was $4,000.

¶ 3.   On January 18, 1995, Schurmann slipped on an icy driveway, hit his head and suffered a severe injury resulting in his total disability. Following his injury, Schurmann applied to Franklin for disability payments. Franklin made five monthly payments of $4,000 each; then it stopped all payments because it had concluded that Schurmann's past income was insufficient to qualify him for $4,000 per month payments and that any benefits due must first be reduced by other payments Schurmann was entitled to receive.

¶ 4.   Schurmann sued Franklin to perform under the policy. Franklin calculated that Schurmann would not be entitled to receive more than $1,500 per month. However, as a settlement,[2] Franklin agreed to pay Schurmann $2,044 per month to age sixty-five, net of social security benefits Schurmann was receiving, rather than the $4,000 per month which Schurmann believed he had purchased. Franklin also made a lump sum payment of $47,452 as a net sum for those months in which no payment of $2,044 had been made, after crediting amounts paid in excess of $2,044 during the first five months. The settlement with Franklin specifically reserved any claim Schurmann had against Neau.

---

[2] The settlement documents from Schurmann's suit against Franklin are part of the record in this appeal.

¶ 5. Schurmann then sued Neau and his errors and omissions insurer, Employers Reinsurance Corporation, alleging claims for strict responsibility and intentional misrepresentation in the sale of the insurance policy. Neau responded with a general denial and raised one affirmative defense, the failure to mitigate damages. Neau moved for summary judgment asserting that even if he made the representations Schurmann claimed, they were not actionable. The circuit court agreed with Neau and granted his motion for summary judgment dismissing Schurmann's complaint. He appeals.

## DISCUSSION

**Standard of Review.**

¶ 6. We review summary judgment decisions *de novo*, applying the same standards employed by the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins an issue of material fact or law. *Id.* If we determine that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* at 232–33, 568 N.W.2d at 34. If the movant has carried his initial burden, we then look to the opposing party's affidavits to determine whether any material facts are in dispute that entitle the opposing party to a trial. *Id.* at 233, 568 N.W.2d at 34.

¶ 7.  The existence of a material misrepresentation is essentially a question of fact, which is generally left for a jury to determine. *See Hartwig v. Bitter*, 29 Wis. 2d 653, 656, 139 N.W.2d 644, 647 (1966). However, when an essential element of a claim cannot be proved under any view of the facts, summary judgment is appropriate. *Smith*, 212 Wis. 2d at 233, 568 N.W.2d at 34.

**Misrepresentation Claims.**

¶ 8.  Schurmann claims for misrepresentation under two theories, strict responsibility[3] and intentional deceit, based on the Franklin policy which afforded him less than the $4,000 per month that he requested and Neau told him had been approved. Neau's answer denies all Schurmann's material allegations. In support of his motion for summary judgment to dismiss the amended complaint, Neau contends that: (1) even if he made the representations which Schurmann alleges in regard to the coverage that would be afforded, the representations were made during the course of an application process. Therefore, his statements related to facts which were not then in existence or were only statements of his opinion and not actionable; (2) Schurmann did not rely on Neau's representations to his detriment; and (3) Schurmann's

---

[3] In the amended complaint, the first claim for relief is labeled "Negligent Misrepresentation," but on appeal, as well as in the circuit court, Schurmann disregards the label and looks to the factual allegations, which he contends support a claim for strict responsibility for misrepresentation. Neau does not object, so we focus our analysis on the arguments presented to us by the parties.

settlement with Franklin precludes his claim against Neau.

¶ 9.    Agency law in Wisconsin does not insulate an agent from liability for the agent's torts. *Ford v. Wisconsin Real Estate Examining Bd.*, 48 Wis. 2d 91, 102, 179 N.W.2d 786, 792 (1970) (further citations omitted). It has long been the rule that an insured whose insurer denies him benefits that he had requested his agent to secure may bring a tort action against his insurance agent for failing to procure the requested coverage. *Appleton Chinese Food Serv., Inc. v. Murken Ins., Inc.*, 185 Wis. 2d 791, 804, 519 N.W.2d 674, 678 (Ct. App. 1994). Therefore, even when an insured has settled with and released the insurer for payment less than would have resulted if the sought-after insurance had been provided,[4] the agent may remain personally liable in tort to the insured for failing to procure the insurance that was requested, as the agent's liability is not dependent on his relationship to the principal but is attributable to the agent's own misconduct. *Id.*

¶ 10.    Schurmann bases his complaint on misrepresentation claims.[5]    To    prevail    on    a    strict

---

[4] However, when the insurer provides the same coverage through settlement with the insured as was requested, no action against the agent exists because he has not failed to produce what was promised. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 231, 568 N.W.2d 31, 33 (Ct. App. 1997).

[5] Most of the cases which claim against an agent for failure to procure the insurance requested by the insured are based on common law negligence. *Appleton Chinese Food Serv., Inc.*, 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994). However, we see no reason why such a claim cannot be presented as one for

responsibility claim, he must plead and prove all of the following: (1) Neau made a representation of material fact; (2) it was untrue; (3) the representation was made on Neau's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement; (4) Neau had an economic interest in the transaction; and (5) Schumann believed Neau's representation to be true and relied on it to his damage. *Whipp v. Iverson*, 43 Wis. 2d 166, 169–70, 168 N.W.2d 201, 203 (1969). To prevail on a claim for intentional misrepresentation, Schurmann must plead and prove the first, second and fifth elements of a strict responsibility claim and also plead and prove that Neau knew his statement was false or that he made it recklessly without caring whether it was true or false and with intent to deceive and induce Schurmann to act upon it. *Id.* at 169, 168 N.W.2d at 203. However, unless the speaker knew of facts inconsistent with his statements or had a present intent not to perform, an action for misrepresentation cannot be based on future events or facts not in existence when the representation was made, or on unfulfilled promises. *Hartwig*, 29 Wis. 2d at 658, 139 N.W.2d at 647.

### 1. *Elements of Misrepresentation.*

¶ 11.   Here, the amended complaint alleges that Neau advised Schurmann that he could apply for $4,000 to $6,000 per month of income continuation coverage in the event of total disability, which payments would be in addition to any social security or other benefits available to him. It also alleges that Neau completed an application, which Schurmann signed

---

misrepresentation if proof of the material allegations is available.

and for which he made the first premium payment, that Neau told Schurmann that his application had been approved by Franklin in the amount of $4,000 per month and that Schurmann believed all Neau's representations to be true and relied on them to his detriment, causing him injury. And finally, it alleges that Neau had an economic interest in the sale of insurance to Schurmann and that Neau made the representations recklessly without caring whether they were true, but with the intent to deceive Schurmann. Those allegations constitute more than representations of future facts or statements of opinion. According to the amended complaint, Neau told Schurmann that Franklin had approved his application for $4,000 per month disability insurance, but after his injury, Franklin refused to pay $4,000 per month. Those allegations are of pre-existing events and facts; therefore, when examined with the rest of the factual allegations in the amended complaint, they are sufficient to set forth claims for strict responsibility and intentional misrepresentation. *Whipp*, 43 Wis. 2d at 169–70, 168 N.W.2d at 203; *Hartwig*, 29 Wis. 2d at 658, 139 N.W.2d at 647.

¶ 12.   For his part, Neau's answer to the amended complaint denied all the material allegations and asserted, as the sole affirmative defense, that Schurmann failed to mitigate his damages. Issues of material fact were joined by the answer.

¶ 13.   To successfully complete the third step in his motion for summary judgment, Neau must submit evidentiary materials sufficient to make a *prima facie* case that Schurmann's complaint must be dismissed as a matter of law. *Smith*, 212 Wis. 2d at 233, 568 N.W.2d at 34. Neau's motion was supported by his answers to Schurmann's requests to admit and Neau's descrip-

tions of why certain requests to admit had been denied. However, Schurmann's material allegations that Neau represented to Schurmann that there had been an application made for $4,000 per month disability insurance; that that application had been approved; that Schurmann would receive $4,000 per month until age sixty-five in the event of his total disability; and that the payments to him under the Franklin policy would be in excess of any social security or other payments he was entitled to receive were not set aside by the submissions in support of Neau's motion for summary judgment. They remain material facts that were denied in Neau's answer, and therefore they continue to require a trial where the finder of fact can determine whether it believes Schurmann or Neau.

¶ 14.   In support of his motion, Neau also submitted several pages from Schurmann's deposition where the American Family disability policy[6] Schurmann had had was compared with what he was being provided by way of settlement with Franklin under the policy Neau assisted him in purchasing. Apparently this was done to show that, even though Schurmann was receiving $2,044 per month instead of $4,000, he was better off than he had been before he purchased the Franklin policy. Neau also identifies testimony from Schurmann's deposition where Schurmann agrees that he could only speculate about what he would have done in regard to upgrading his disability

_____

[6] According to submissions Schurmann relied on in opposition to Neau's summary judgment motion, he may have had more than one disability policy from American Family at the time he purchased the Franklin policy. However, it is undisputed that the combined payments from all disability policies that were in force when the Franklin policy was issued would have paid less than the settlement he received from Franklin.

insurance if the Franklin policy had not been issued. From these facts, Neau contends that Schurmann cannot prove that he relied to his detriment on any representation Neau made. Neau misunderstands the concept of detrimental reliance.

¶ 15.   The measure of damages for both strict responsibility and intentional misrepresentation is the benefit of the bargain. *Skrupky v. Elbert,* 189 Wis. 2d 31, 47, 526 N.W.2d 264, 270 (Ct. App. 1994); *Lundin v. Shimanski,* 124 Wis. 2d 175, 195, 368 N.W.2d 676, 686 (1985). Under the benefit of the bargain rule of damages, a plaintiff who prevails on his claim is entitled to damages equivalent to what he would have received if the representation relied upon had been true. *Skrupky,* 189 Wis. 2d at 47, 526 N.W.2d at 270. That is the legal measure of his detrimental reliance.

¶ 16.   Here, Neau tries to stand the rule on its head when he asserts that because the insurance Franklin provided by way of settlement is worth more than a disability policy Schurmann relinquished after purchasing what he thought was a $4,000-per-month policy, he did not rely to his detriment on Neau's statements. The amount of disability insurance Schurmann had already purchased prior to meeting with Neau is irrelevant to whether he was denied the benefit of the bargain in regard to the Franklin policy. It is equally irrelevant that Schurmann could only "speculate" about what he would have done about upgrading his disability insurance if his application had not been approved. If Schurmann can prove the facts asserted in the amended complaint, his benefit of the bargain damages shall be measured by what he would have recovered with payments of $4,000 per month during the course of his disability, less the $2,044 per month

payments he is actually receiving. *Skrupky*, 189 Wis. 2d at 48, 526 N.W.2d at 270.

## 2. *Settlement with the Insurer.*

¶ 17.   Neau also contends that Schurmann's settlement with Franklin precludes his suit against Neau. He relies on *Scheideler v. Smith & Assocs., Inc.*, 206 Wis. 2d 480, 557 N.W.2d 445 (Ct. App. 1996). Neau's reliance on *Scheideler* is misplaced.

¶ 18.   *Scheideler* involved a motor vehicle accident where the person liable had insufficient insurance to cover all of the damages Rebecca Scheideler and her four children sustained. She made a claim for $200,000 of underinsured motorist (UIM) coverage under her own General Casualty policy. The claim was denied because, although she had once had that level of UIM coverage, it had been deleted from the policy for the car she was driving at the time of the accident. Scheideler sued General Casualty and Smith & Associates, the agent who had deleted Scheideler's UIM coverage. General Casualty settled with Scheideler by paying her $200,000, the maximum she would have received if her UIM coverage had not been deleted. *Scheideler*, 206 Wis. 2d at 489, 557 N.W.2d at 449. Because Scheideler was paid all she could have been paid if General Casualty's agent had not erroneously deleted the UIM coverage, we concluded that the election of remedies doctrine precluded a claim against the agent subsequent to settlement. That is, we concluded Scheideler's claim had been fully satisfied.

¶ 19.   Here, Schurmann's settlement with Franklin was not for the full amount for which he had bargained. It was for approximately fifty-one percent of that amount. Therefore, his claim was not fully satis-

fied, and our holding in *Scheideler* is not a bar to Schurmann's continuation of this claim against Neau. Rather, we apply *Appleton Chinese Foods,* where we concluded that "even where an insured has settled and released an insurer, the agent may remain personally liable in tort to the insured for failing to procure the proper insurance." *Appleton Chinese Foods*, 185 Wis. 2d at 804, 519 N.W.2d at 678. Accordingly, we conclude that Neau has not made a *prima facie* case to dismiss Schurmann's amended complaint, and we reverse the judgment and remand to the circuit court.

## CONCLUSION

¶ 20.    Because we conclude that material issues of fact exist that, if proved, would entitle Schurmann to relief, we reverse the circuit court's summary judgment dismissing the amended complaint, and we remand for a trial on the merits.

*By the Court.*—Judgment reversed and cause remanded.