Brian E. Davis, Plaintiff-Appellant,
v.
Countrywide Home Loans, Inc. and Bankers Trust Company of California, N.A., N/K/A Deutsche Bank National Trust, Defendants-Respondents.
No. 03-1337.
Court of Appeals of Wisconsin.
Opinion Filed: May 5, 2004.
Before Anderson, P.J., Brown and Snyder, JJ.
¶1 PER CURIAM.
Brian E. Davis appeals from the order granting summary judgment to Countrywide Home Loans, Inc. and Bankers Trust Company of California, NA, ("Countrywide"). Davis raises various arguments on appeal. We conclude that Countrywide was entitled to judgment as a matter of law on the claims for conversion and breach of fiduciary duty. We also conclude, however, that Davis stated a claim for breach of contract. We remand the matter to the circuit court for a trial on that issue. We also conclude that Davis alleged that his credit rating was negatively affected by Countrywide's actions, and that, based on the undisputed facts, he is entitled to a declaratory judgment to have his credit rating corrected. Consequently, we affirm in part, reverse in part, and remand the matter to the circuit court for a trial on the claim of breach of contract and for an order directing Countrywide to correct its report to credit agencies that Davis was delinquent on a loan.
¶2 Our review of the circuit court's grant of summary judgment is de novo, and we use the same methodology as the circuit court. M&I First Nat'l Bank v. Episcopal Home Management, Inc., 195 Wis. 2d 485, 496-97, 536 N.W.2d 175 (Ct. App. 1995).
We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins an issue of material fact or law. If we determine that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. If the movant has carried his [or her] initial burden, we then look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial.
Schurmann v. Neau, 2001 WI App 4, ¶6, 240 Wis. 2d 719, 624 N.W.2d 157 (citations omitted).
In testing the sufficiency of a complaint, we take all facts pleaded by plaintiffs and all inferences which can reasonably be derived from those facts as true. Pleadings are to be liberally construed, with a view toward substantial justice to the parties. Section 802.02(6), STATS. The complaint should be dismissed as legally insufficient only if it is quite clear that under no circumstances can plaintiffs recover." Green Spring Farms v. Kersten, 136 Wis. 2d 304, 317, 401 N.W.2d 816, (1987) (citation omitted). In our review, we are limited to consideration of the pleadings and evidentiary facts submitted in support and opposition to the motion.
See Super Valu Stores, Inc. v. D-Mart Food Stores, Inc., 146 Wis. 2d 568, 573, 431 N.W.2d 721 (Ct. App. 1988).
¶3 The underlying action was filed by Davis alleging five causes of action: (1) misappropriation; (2) conversion; (3) breach of fiduciary duty; (4) breach of contract; and (5) violations of the federal Real Estate Settlement and Procedures Act, 12 U.S.C. § 2606(c). Davis has represented himself throughout these proceedings.[1] The circuit court dismissed counts one and five. Eventually, both Davis and Countrywide moved for summary judgment on the remaining counts. The circuit court ultimately granted summary judgment to Countrywide finding, among other things, that Davis had not proven any compensable damages.
¶4 Davis brought the underlying action against Countrywide because of a series of errors Countrywide made while servicing various loans held by Davis. During the time period at issue, Davis had four mortgage loans held by Bankers Trust, with Countrywide acting as the servicing agent.[2] Countrywide began servicing the last of these loans in January 2001. We will refer to this as Loan A.[3] According to the loan agreement, the first payment was due in February 2001.
¶5 Davis sent the Loan A payment for $522 to Countrywide in February 2001. He asserts, and Countrywide does not deny, that Countrywide had not yet provided him with payment coupons for this loan, so he mailed the Loan A payment to Countrywide without a payment coupon. He also sent in the monthly payments for the other three loans. When Countrywide received the payment for Loan A, it credited it to one of Davis's other loans. This was Countrywide's first mistake.
¶6 At the summary judgment hearing, counsel for Countrywide explained the reason for the mistake to the court. Counsel stated that at the time the check for Loan A was received by Countrywide in February 2001, the loan had not yet been entered on CW's system and that's why the check was credited to the wrong loan.[4] In its response to Davis's discovery requests, which were part of the summary judgment record, Countrywide said that the loan was "boarded to its system on January 12, 2001." Since this court is bound by the documents submitted in support of the summary judgment motion, we conclude that the undisputed fact is that the loan was entered on Countrywide's computer on January 12, 2001, before Countrywide received the payment from Davis.
¶7 It is undisputed that Countrywide credited this payment to the wrong account.[5] Further, it is undisputed that Davis made the regular monthly payment in February 2001, for the loan to which the Loan A payment was credited. The Loan A payment, therefore, was an additional payment on that loan. Eventually, Countrywide notified Davis that he was in default on Loan A. Davis, believing he had made all of his payments, contested this.
¶8 On August 30, 2001, Countrywide sent Davis a letter that said he had not paid the insurance for the property on Loan A and that Countrywide had deducted a certain amount of money from Davis's escrow account to cover insurance.[6] Davis, however, had paid insurance on the property for the year. Countrywide compounded this mistake by sending a letter telling Davis that he did not have proper insurance to the wrong address.[7] Countrywide admits that: "when this loan account was boarded to Countrywide's computer system, the insurance information was not entered into the system. Accordingly, Countrywide did not register the account as having a record of insurance." This was Countrywide's second mistake. This mistake, however, they remedied on discovery by crediting Davis's escrow account with the amount of money they had removed to purchase the insurance.
¶9 Countrywide's third mistake occurred in December 2001. The undisputed facts show that Countrywide sent a form to Davis that provided him with three options for paying the property taxes with the escrow funds on his three remaining loans (the fourth loan had been satisfied in October 2001). Davis chose the option that required Countrywide to send the escrow checks to him by December 18, 2001, payable to him and the local taxing authority. Countrywide admits that in December 2001, it "inadvertently" mailed these checks to Davis at the property address rather than to his home address.[8] Davis did not receive these checks and, consequently, paid the taxes out of his own savings. Countrywide placed a stop order payment on these checks in August 2002. Pursuant to an order of the circuit court, Countrywide mailed checks to Davis for the "overage amounts" in these accounts in October 2002.
¶10 Countrywide's final mistake was by reporting to credit-reporting agencies that Davis was in default on the February 2001 payment for Loan A. Davis claims that he notified Countrywide that he had made all the payments for this loan, yet Countrywide did not discover its error until far into this litigation. In fact, in its answers to Davis's first discovery requests, Countrywide continued to blame Davis for the error, suggesting that he mailed the payment to the Veterans Administration or Bankers Trust. Once Countrywide discovered that it was its error that led to default, Countrywide should have taken action to remedy this situation.
¶11 In his complaint, Davis asserted causes of action for misappropriation, conversion, breach of contract, breach of fiduciary duty, and a federal statutory issue. He also asked for a declaratory judgment and preliminary order that would require a party to document that a payment is late and "require defendants to immediately correct the derogatory payment information that they have maliciously provided to any and all credit reporting agencies." Prior to summary judgment, the circuit court dismissed the claim for misappropriation under WIS. STAT. § 943.20(1)(b) (2001-02),[9] and the federal claim. We affirm the dismissal of these claims. At summary judgment, the trial court also found that Davis had not established that Countrywide intentionally withheld or "pilfered" any of his money. We agree. Davis's pleadings and affidavits to the contrary are conclusory. That left claims for conversion, breach of fiduciary duty, breach of contract, and the request for a declaratory judgment.[10]
¶12 The circuit court also concluded that Davis was in default on Loan A. The court reasoned that the $522 payment had been credited to another account, so that Davis had gotten the benefit of that payment. The court further found that Davis, therefore, still owed Countrywide $522 for the February 2001 payment to Loan A. Davis protested that he was in default because of Countrywide's mistake. The court responded that it was his responsibility to pay off the amount owed.
¶13 While the circuit court concluded that Davis had not submitted any proof that Countrywide intentionally withheld his money, it apparently determined either that there were material facts in dispute as to whether there was negligent withholding of monies belonging to Davis, or that Countrywide was not negligent as a matter of law. In either case, we conclude that the circuit court erred.
¶14 First, we conclude that the court erred when it found that Countrywide was not negligent as a matter of law. "A bank must exercise ordinary care in dealing with deposits." 10 AM. JUR. 2d Banks and Financial Institutions § 750 (1997). The bank is liable for loss caused by its negligence in handling a customer's account. Id. at § 752. "When the consequence of the negligence is that a particular fund was not used for the purpose for which it was intended by the bank's customer, the amount so lost to the customer is a direct loss and the bank is liable therefor to its customer." Id. Countrywide, therefore, can be liable for its negligence in mishandling Davis's loan payment.
¶15 Since we conclude that the court erred when it concluded that there was no negligence as a matter of law, the question becomes whether the court was correct when it found that there were disputed issues of material fact. The undisputed facts show that Davis made the payment as he was required to do under the loan agreement. He did not submit a coupon with the payment because Countrywide had not yet provided him with a coupon book. It is unclear to this court how Davis could have done anything differently. Countrywide suggested at the summary judgment hearing that this incident occurred because the loan had not yet been entered on its computer system (counsel specifically refused to acknowledge that it was a mistake). While Countrywide's own submissions show that it had, in fact, been entered on its computer prior to this time, the court fails to see how Countrywide's delay in entering a loan account into its computer system excuses crediting it to the wrong loan. It is clear from the facts that Davis attempted to fulfill his obligations under the loan agreement by making a timely payment on Loan A in February 2001. We can only conclude based on these facts that Countrywide credited the wrong account through its own error.
¶16 Based on this, we conclude that the circuit erred when it found that there were disputed facts as to whether Countrywide was negligent when it misapplied the check Davis sent to the wrong account. Consequently, whether the circuit court was saying there was no negligence as a matter of law, or that there were disputed issues of material fact, the court is wrong on both counts. We conclude that Countrywide was negligent both as a matter of law and as a matter of fact. The next question then is, where does this negligence fit into the causes of action pled by Davis?
¶17 The circuit court found that Countrywide was entitled to judgment because Davis had not established any damages as a result of Countrywide's negligent misapplication of his loan payment. We disagree. He at least alleged a lost business opportunity and the negative effect on his credit rating because Countrywide reported him to be delinquent. He has not, however, pled a cause of action that would allow him to recover these damages.
¶18 We conclude that he did not state causes of action for breach of fiduciary duty or conversion. The court properly granted summary judgment to Countrywide on these issues. We further conclude, however, that Davis stated a claim for breach of contract and remand to the circuit court for trial on this issue. We also conclude that he is entitled to a declaratory judgment that he was not delinquent on his payment for Loan A as a result of Countrywide's negligence in misapplying this loan.
¶19 Countrywide is entitled to judgment as a matter of law on Davis's claim for breach of fiduciary duty. In another proceeding before this court concerning the payment of escrow funds, Davis asserted that the bank that held the mortgages on certain of his properties[11] breached its fiduciary duty to him by not sending the tax escrow checks to him on time. Davis v. Nationsbank, N.A., No. 00-0705, unpublished slip. op. (Wis. Ct. App. Jan. 30, 2001) (per curiam). This court concluded that Davis could not establish a claim for breach of fiduciary duty because the document at issue was a form document used by the Veterans Administration. Id., ¶¶33-34. That document had been interpreted to create a debtor-creditor relationship rather than a fiduciary one. Id., ¶33. It is also undisputed that Davis obtained the mortgages at issue here through the Veterans Administration. Consequently, the same ruling must apply. Since Davis was aware of our previous ruling on this issue, his claim before this court that Countrywide breached a fiduciary duty borders on the frivolous.
¶20 We next consider whether Davis has established a claim for conversion. The Wisconsin Jury Instructions explain the conversion as:
Conversion is an intentional interference with another person's rights to possession of property. The intent required is not necessarily a matter of conscious wrongdoing. Wrongful intent or bad faith are not essential elements of conversion. Donovan v. Barkhausen Oil Co., [200 Wis. 194, 199, 227 N.W. 940 (1929)]. Regas v. Helios, 176 Wis. 56, 186 N.W. 165 (1922). Thus, conversion cannot be based on a negligent interference with the property. Lund v. Keller, 203 Wis. 458, 233 N.W. 769 (1931). It requires some intentional dominion or control over property which is inconsistent with the owner's rights. Prosser, Torts, § 15, p. 83 (1971). Thus, every theft is a conversion, but not every conversion is a theft. Comment, WIS JICIVIL 2200-Conversion. In this case, we have concluded that Davis has established that Countrywide's conduct was negligent, but not intentional. Consequently, Davis's claim for conversion also must fail. That leaves the claim for breach of contract.
¶21 In his complaint, Davis asserts that Countrywide sent him a form that gave him three options for having his property taxes paid with the escrow funds. He checked the option that required Countrywide to send checks to him by December 18, 2001. Countrywide did not send checks to him by December 18, 2001, and he paid the property taxes with money in his own accounts. Countrywide admitted that they "inadvertently" mailed the checks to the property address rather than to Davis. The complaint further alleges that Countrywide did not return the money to him. The documents submitted in support of summary judgment show that Countrywide did not refund the money to Davis until ordered to do so by the court in October 2002.
¶22 The Circuit court concluded that Davis had not established that he had suffered any damages as a result of Countrywide's actions. We disagree. Davis's damages on this claim would be the lost value of the money he used from his own accounts to pay the taxes in place of the escrowed money held by Countrywide. The lost value of money is compensated by an award of interest. See R.S. Deering Mechanical Contractors v. Livesey Co., 161 Wis. 2d 727, 731, 468 N.W.2d 758 (Ct. App. 1991) (citing Wyandotte Chemicals Corp. v. Royal Elec. Mfg. Co., 66 Wis. 2d 577, 582, 225 N.W.2d 648 (1975)). Based on this record, we conclude that the circuit court erred when it granted summary judgment to Countrywide on the breach of contract claim, and that Davis is entitled to a trial on this issue.
¶23 We also conclude that Davis's complaint states a claim for a declaratory judgment that he was not in default on the February 2001 payment on Loan A. Our pleading rules require that a pleading set forth "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." WIS. STAT. § 802.02(1)(a). The pleading must also demand judgment for the relief the pleader seeks. WIS. STAT. § 802.02(1)(b). We conclude that the request for a "preliminary order" and "declaratory judgment" in Davis's complaint, put Countrywide on notice that he was asking for a declaratory judgment that he did not default on Loan A.
¶24 For a court to grant a declaratory judgment, the following facts or conditions must exist:
There must exist a justiciable controversy  that is to say:
(1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.
(2) The controversy must be between persons whose interests are adverse.
(3) The party seeking declaratory relief must have a legal interest in the controversy  that is to say, a legally protectible interest.
(4) The issue involved in the controversy must be ripe for judicial determination.
Miller Brands-Milwaukee, Inc. v. Case, 162 Wis. 2d 684, 694, 470 N.W.2d 290 (1991).
¶25 We conclude that Davis has established the criteria for a declaratory judgment that he did not default on the February 2001 payment for Loan A. The undisputed facts in the summary judgment record show that the delinquency on the loan payment was the result of Countrywide's computing error and cannot be attributed to Davis. Further, Countrywide compounded this error by reporting to credit-reporting agencies that Davis was in default on the loan. We remand to the circuit court to enter an order requiring Countrywide to contact all credit-reporting agencies and inform them that Davis was not delinquent on the February 2001 payment on Loan A.
¶26 We recognize that this leaves the issue of what happens to the additional $522 owed on that loan which Countrywide credited to the wrong account. We question whether the fact that Countrywide credited the other loan for this amount, and ultimately declared that loan to be paid off, means that they are estopped from asserting a claim to that amount. However, the parties have not briefed this issue. Consequently, we also remand for a determination of whether Davis is required to pay the additional amount owed on the loan that was satisfied in October 2001. We want to make it absolutely clear that Davis may not be found to be delinquent on either Loan A or the loan to which the amount was credited based on Countrywide's misapplication of his payment. If the trial court determines that Countrywide is entitled to recover the outstanding amount on the satisfied loan, Davis shall be given a reasonable amount of time to pay that amount to Countrywide and he will not be required to pay interest from the time of Countrywide's misapplication (February 2001) forward.
¶27 In sum, we affirm that portion of the order of the circuit court that awarded summary judgment to Countrywide on the claims for breach of fiduciary duty and conversion. We further determine that Davis is entitled to a declaratory judgment as a matter of law and remand the matter to the circuit court to enter such an order consistent with this opinion, and to hold further proceedings to determine whether Countrywide is entitled to recover the unpaid portion of the loan that it has already declared to have been satisfied. We further determine that Davis stated a claim for breach of contract and reverse that portion of the order which granted summary judgment to Countrywide on that issue. We remand the matter to the circuit for a trial on that issue.
No costs to either party.
By the Court.  Order affirmed in part; reversed in part and cause remanded with directions.
NOTES
[1] We strongly advise Davis to obtain the assistance of an attorney for the remand proceedings. We suspect that had Davis been represented by an attorney throughout these proceedings, the matter would have been resolved much more efficiently, both from a procedural and substantive standpoint.
[2] Although Davis initially mortgaged the property through the Veterans Administration, the mortgages were eventually sold to Bankers Trust.
[3] The property which is the basis for this loan is located at 3606 North 61st Street, Milwaukee, Wisconsin.
[4] Counsel stated: "Now let's look at the chronology here. He sent the check for $522 to Countrywide; it arrived, I think February 4 or February 5. Now we have put into our responsive, our under oath response to his discovery requests what happened. What happened is, is that this new account on Property A was not on the computer." He then goes on to state that here "there was no mistake. The person who received the check ... did not have an account for Property A on February 4 or February 5" so it was credited to the other account.
[5] The check was credited to a loan for property located at 4741 North 69th Street, Milwaukee, Wisconsin. Countrywide says that this loan was "fully satisfied" on October 5, 2001. Countrywide asserted that the fact that the loan had been paid off was the reason it took so long for them to discover what had happened to the $522 payment.
[6] Countrywide originally sent a letter to the wrong address in April.
[7] For reasons Countrywide does not explain, it then took them four months to send the letter to the correct address.
[8] Countrywide admitted this for the three properties involved.
[9] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[10] We construe Davis's request for a preliminary order to be part of his request for declaratory judgment.
[11] Although not named as one of the parties, it appears that Bankers Trust was the mortgage holder. Davis v. Nationsbank, N.A., No. 00-0705, unpublished slip. op., ¶5 (Wis. Ct. App. Jan. 30, 2001) (per curiam).