Thomas AVERY and Mary Avery,
Plaintiffs-Respondents,†

v.

Drew DIEDRICH, The Diedrich Agency, Inc.
and Westport Insurance Corporation,
Defendants-Appellants.

Court of Appeals

*No. 2005AP1730. Submitted on briefs April 6, 2006.
—Decided June 7, 2006.*

2006 WI App 144

(Also reported in 720 N.W.2d 103.)

† Petition to review granted 10-10-06.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Mark S. Nelson* and *Heather A. Lutzke* of *Nelson, Connell & Conrad, S.C.* of Brookfield.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Daniel S. Davis* and *Leah M. Michaelson-Link* of *Davis & Gelshenen, LLP* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Wisconsin case law makes clear that when an insurance agent agrees to procure coverage that the client requests, the failure to acquire it exposes the agent to a suit claiming negligence. This case tests whether an agent is exposed to liability even if the client requests the coverage and the agent *has not*

*agreed* to procure it. We hold that the insurance agent is not so exposed and reverse the circuit court's determination to the contrary.

¶ 2. Given that this case involves a motion for summary judgment, we recite the facts in the light most favorable to the plaintiffs. *See Rainbow Country Rentals and Retail, Inc. v. Ameritech Publ'g, Inc.*, 2005 WI 153, ¶ 13, 286 Wis. 2d 170, 706 N.W.2d 95 (evidence viewed in light most favorable to nonmovant). Mary Avery inherited a property in Green Lake, Wisconsin, from her father in early 2002. Her father had insured the property for $150,000, and she and her husband, Thomas Avery, later procured an Auto-Owners Insurance Company policy for the same amount through Drew Diedrich at The Diedrich Agency, Inc. (collectively, Diedrich). Diedrich had confirmed the $150,000 value by conducting an inspection of the premises and using an evaluation formula.

¶ 3. Months later in mid-July, the Averys had a meeting with Diedrich regarding various insurance policies. At that time, Thomas stated his opinion that the policy limits should be raised to at least $250,000 and asked Diedrich to increase coverage. Diedrich responded that the property was not worth that much and that a $100,000 increase on a $150,000 property would look suspicious. The Averys agreed to get an assessment to support the increased value and then get back to Diedrich.

¶ 4. The Averys subsequently obtained a verbal assessment from a contractor. However, they never communicated that fact to Diedrich. The parties did not discuss further the possibility of an increase in coverage, and Diedrich had not procured additional fire insurance coverage for the Averys as of September 6, when a fire occurred on the property. The $150,000

policy limits turned out to be too low; the replacement cost of the property exceeded $250,000. The Averys sued Diedrich for damages on the theory that he negligently failed to increase their coverage.

¶ 5. Diedrich moved for summary judgment, and the circuit court held a hearing. Diedrich contended that an agreement between the parties was a necessary prerequisite to an insurance agent's duty to procure coverage for a customer. The court denied Diedrich's motion, interpreting Wisconsin law to require an agent to procure any coverage the customer requested, not just coverage it agreed to procure. The court relied primarily on three cases. It first cited *Nelson v. Davidson*, 155 Wis. 2d 674, 681, 456 N.W.2d 343 (1990), and *Meyer v. Norgaard*, 160 Wis. 2d 794, 798, 467 N.W.2d 141 (Ct. App. 1991), which state that an agent has a duty to act in good faith and follow the insured's instructions. It also noted that the law imposes on the insured the duty to determine how much coverage he or she needs. *See Meyer*, 160 Wis. 2d at 798–800. The court concluded that when insureds meet this obligation, they have done everything the law requires of them and therefore are entitled to demand that the agent follow their instructions. The court cited *Lisa's Style Shop, Inc. v. Hagen Insurance Agency, Inc.*, 181 Wis. 2d 565, 577, 511 N.W.2d 849 (1994)—which held that absent a request by the insured to raise its policy limit, the agent's only duty was to ensure that existing coverage remained in effect—as support for its conclusion. According to the court, "[T]he inference there is if the insured then makes a request for increasing the coverage then there is a duty to carry that out. So I think . . . the language in *Lisa's Style Shop* is consistent with the principles in both *Nelson* and *Meyer*." Diedrich appeals from the denial of summary judgment.

¶ 6. A court should award summary judgment when, taking the evidence in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Rainbow Country Rentals and Retail, Inc.,* 286 Wis. 2d 170, ¶ 13. Our review is de novo, and we apply this standard just as the circuit court would. *Id.* Here Diedrich stipulates to the Averys' version of the facts for purposes of this motion. We therefore have only a legal question before us, namely the scope of Diedrich's duty to the Averys. *See id.* (only legal questions remain where facts undisputed); *Nelson,* 155 Wis. 2d at 679 (duty involves a legal question the court resolves based on policy considerations).

¶ 7. Both parties rely heavily on *Appleton Chinese Food Service, Inc. v. Murken Insurance, Inc.*, 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994). In *Appleton Chinese*, the court held that the insurance agent was properly subjected to liability for negligently failing to procure coverage that the insured had requested. *See id.* at 802–03, 811. In that case, the owners of a Chinese restaurant had asked Murken to procure a policy with replacement cost and lost-business-income coverage for their property. *See id.* at 796. Murken prepared applications but, due to a clerical error, these applications did not request coverage for lost business income. *Id.* at 798. Hence, the policy Murken procured on the customers' behalf did not contain such coverage. *Id.* at 799. The customers did not learn of this omission until a fire destroyed the property. *Id.* at 796.

¶ 8. The Averys conclude that *Appleton Chinese* supports their claim. They view the case as holding that the plaintiffs were allowed to recover from Murken

simply by virtue of the fact that they requested coverage, which Murken then failed to procure.

■

¶ 9. We read *Appleton Chinese* differently. The court's language indicates that a mere request for coverage does not give rise to a duty on the agent's part. The court stated that the insurance agent's duty includes "an independent duty to act with reasonable care, skill and diligence in procuring the *agreed upon* coverage." *Id.* at 805 (emphasis added). Further, "[t]he negligent failure of an insurance agent to issue a policy, *pursuant to an agreement relied upon by the applicant,* renders the agent liable in tort for loss resulting therefrom." *Id.* at 804 (citation omitted; emphasis added). Thus, where a customer has requested coverage and the parties have entered into an agreement concerning that coverage, the agent's duty to diligently seek to obtain that coverage arises. That "something more" was present in *Appleton Chinese*. After the plaintiffs requested coverage, Murken prepared seven applications and ultimately procured a policy. *Id.* at 798–99. These actions certainly evidenced an agreement between the parties, and the plaintiff evidently relied on that agreement.

■

¶ 10. This case presents an entirely different scenario. Diedrich did not enter into an agreement with the Averys to procure additional coverage. We acknowledge that Diedrich had a pre-existing relationship with them. However, all we can discern from the record is that the parties contracted for Diedrich to obtain a $150,000 policy. It is undisputed that he did so. Any increase in coverage would not have been "pursuant to" that agreement. Thus, we cannot conclude that the

775

Averys' initial agreement gave rise to a duty to procure the requested increase in coverage.

■

¶ 11. We conclude that other case law that the Averys offer is distinguishable for a similar reason. We acknowledge that *Nelson* and *Meyer* impose duties on an agent to act in good faith and follow the customer's directions. However, in both cases the agent had procured policies for the customer. Neither speaks to whether such a duty would have arisen in the absence of such an agreement between the parties. The Averys also cite to *Schurmann v. Neau*, 2001 WI App 4, 240 Wis. 2d 719, 624 N.W.2d 157 (Ct. App. 2000). *Schurmann* involved a customer's request for an increase in coverage. *Id.*, ¶ 2. The insurance agent assured the customer that he qualified for the increase and procured a policy with the requested amount. *Id.* The insurer later determined that the customer did not qualify for that level of coverage. *Id.*, ¶ 3. Again, this case involved more than simply a request for increased coverage. It involved actions on the part of the agent manifesting an agreement to follow that request.

■

¶ 12. Our conclusion that an insurance agent must agree to procure a coverage increase before he or she has a duty to do so finds support in case law from other jurisdictions and among commentators. We turn first to other case law. The Montana Supreme Court, for example, states, "Montana law requires a client's request to procure certain insurance, followed by an agent's commitment to do the same to put the agent under a 'duty' to procure . . . . Absent a duty, there can be no negligent failure to procure insurance." *R.H. Grover, Inc. v. Flynn Ins. Co.*, 777 P.2d 338, 341 (Mont. 1989) (citation omitted). Obviously, a request by a

776

customer to procure coverage is to no avail in establishing a duty on the agent's part unless the agent commits to do so.

■

¶ 13. *Baldwin v. Lititz Mutual Insurance Co.*, 393 S.E.2d 306, 307–08 (N.C. Ct. App. 1990), also delineates the responsibilities of an insurance agent to a customer:

> As a general rule, when an insurance agent undertakes to procure insurance for a customer to afford protection against a designated risk, the law imposes upon the agent the duty to exercise reasonable care in performing that undertaking, and the agent will be liable for loss attributable to the negligent performance or default of that duty . . . . But it is equally well established that an insurance agent is not obligated to assume the duty of procuring a policy of insurance for a customer. In determining whether an agent has undertaken to procure insurance for a customer, the court must consider the conduct of the parties and the communications between them tending to show that the agent accepted an obligation to provide insurance.

(Citations omitted.) *Baldwin* reveals that the insurance agent, not the customer, gets to decide whether or not the agent will assume the duty to procure coverage. If the law were to recognize a duty based on a mere request by the customer that the agent obtain such insurance, it would effectively give customers a veto over the agent's decision.

¶ 14. Commentary and other sources are in accord. According to 2–41 COMMERCIAL DAMAGES: REMEDIES IN BUSINESS LITIG. P 41.07[1], an insurance agent may acquire enforceable duties by its conduct, and an agent "who has *agreed* to procure insurance has a duty to exercise reasonable skill and care in obtaining that insurance." (Emphasis added.) Further, an agent may

incur liability if "the agent has failed to obtain *promised* coverage." *Id.* at P 41.07[2] (emphasis added). "Black-letter law relieves the agent . . . from liability 'where the agent effects a binding contract of insurance that conforms to the agreement between the agent and the insured.' " Daniel D. Blinka & Thomas J. Hammer, *Court of Appeals Digest,* WISCONSIN LAWYER 42, 46 (Oct. 1994) (quoting *Appleton Chinese).* Another commentator speaks of a "foundational duty principle" governing an agent's relationship to his or her customers. *See* CLARANCE E. HAGGLUND ET AL., INSURANCE PRODUCER LIABILITY: IN PLAIN LANGUAGE 17 (1991). This principle states that "the [agent] owes the customer no duties until the [agent] agrees to undertake a particular task." *Id.*

¶ 15. Again, Diedrich undertook and agreed to only the "particular task" of procuring a $150,000 fire insurance policy. Diedrich performed that task. Because there is no evidence that Diedrich's conduct failed to conform to the parties' agreement, we must assume that Diedrich's duty to the Averys ended when it procured that policy. Incurring additional coverage was a new task, and the Averys could not unilaterally impose it on Diedrich. Diedrich did not agree to perform this new task and therefore had no duty to perform it.

¶ 16. We wish to make two further points before closing. First, we do not accept the Averys' suggestion that the applicable jury instruction reveals the unimportance of the agent's agreement to procure insurance. They state, "Nowhere in the applicable Jury Instruction or in any Wisconsin case is there stated a requirement that the agent must agree to put the coverage into effect before the duty attaches. The requirement simply does not exist." We disagree that this omission is significant. Agreement goes to the threshold question of duty,

which, as we have said above, presents a legal question. Juries do not resolve questions of law.

¶ 17. Second, the language in *Lisa's Style Shop*, on which the circuit court relied, is not at odds with our holding. In *Lisa's Style Shop*, the plaintiff had not even requested increased coverage. *Lisa's Style Shop*, 181 Wis. 2d at 570. It is perfectly consistent to say on the one hand that "[a]bsent a request from [the customer] to raise the [policy] limits, [the agent's] only duty [i]s to insure that [the customer's] coverage remain[s] in effect," *id.* at 577, and on the other hand that a request *could* give rise to such a duty, depending on whether the agent agreed to honor the request.

¶ 18. We reverse the circuit court's denial of Diedrich's summary judgment motion. *Appleton Chinese*, as well as commentary and case law from other courts, clearly indicates that the agent must agree to procure particular coverage before the law will impose on the agent a duty to obtain that coverage. Diedrich never agreed to raise the Averys' policy limits.

*By the Court.*—Order reversed.