Thomas AVERY and Mary Avery,
Plaintiffs-Respondents-Petitioners,

v.

Drew DIEDRICH, The Diedrich Agency, Inc.
and Westport Insurance Corporation,
Defendants-Appellants.

Supreme Court

*No. 2005AP1730. Oral argument March 2, 2007.
—Decided June 27, 2007.*

2007 WI 80

(Also reported in 734 N.W.2d 159.)

For the plaintiffs-respondents-petitioners there were briefs by *Daniel S. Davis, Leah M. Michaelson-Link,* and *Davis & Gelshenen, LLP,* Milwaukee, and oral argument by *Daniel S. Davis.*

For the defendants-appellants there was a brief by *Mark S. Nelson, Heather A. Lutzke,* and *Nelson, Connell, Conrad, Tallmadge & Slein, S.C.,* Brookfield, and oral argument by *Mark S. Nelson.*

An amicus curiae brief was filed by *William C. Gleisner, III* and *the Law Offices of William C. Gleisner III,* Milwaukee, and *Timothy M. Barber* and *Hanaway Ross, S.C.,* Green Bay, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Daniel W. Hildebrand, Dennis P. Birke,* and *DeWitt Ross & Stevens S.C.,* Madison, on behalf of Professional Insurance Agents of Wisconsin, Inc., Independent Insurance Agents of Wisconsin, Inc., and National Association of Insurance and Financial Advisors – Wisconsin.

¶ 1. JON P. WILCOX, J. This is a review of a published court of appeals decision, *Avery v. Diedrich,* 2006 WI App 144, 294 Wis. 2d 769, 720 N.W.2d 103. The court of appeals reversed an order of the Fond du Lac County Circuit Court, Dale L. English, Judge, which denied the motion for summary judgment made by Drew Diedrich, The Diedrich Agency, Inc. (collectively, Diedrich) and Westport Insurance Corporation (Westport).

¶ 2. This appeal presents the following question: If an insured requests an increase in insurance coverage and the insurance agent has not agreed to procure it, does the agent have a duty to procure it? We hold

that an insurance agent does not have a duty to procure requested insurance coverage until there is an agreement that the agent will do so. Accordingly, we affirm the court of appeals.

I

¶ 3.    Early in 2002 Mary Avery received a residential property located at W3283 Orchard Avenue, Green Lake, Wisconsin, (the Orchard property) from her father's real estate trust.[1] Her parents had used the four bedroom residence as a vacation home. Soon after receipt, Mary Avery transferred the Orchard property to the Cedar Ridge Real Estate LLC, an entity owned by her and her husband, Thomas Avery.

¶ 4.    Thomas Avery contacted Diedrich to arrange replacement cost coverage on the Orchard property. Drew Diedrich, part-owner and president of The Diedrich Agency, Inc., had been the Averys' insurance agent since 1996. He had arranged for a number of different types of policies for the Averys, including an equine professional policy, a farm owners policy, a commercial automobile policy, and several policies for rental properties.

¶ 5.    Thomas Avery requested $150,000 worth of coverage for the Orchard property, the same amount of coverage that Mary's father had previously had for the property. Diedrich bound the coverage with Auto-Owners Insurance Company. He then filled out and submitted an application with the specifications of the Orchard property. After binding the coverage and submitting the application, Diedrich visited the property

---

[1] For purposes of the motion for summary judgment, Diedrich and Westport stipulated to the Averys' version of the facts.

697

and confirmed its value. His confirmation of the property's value included measuring the exterior of the building, noting the roof type, and taking a photograph of the property. According to Diedrich's evaluation, the $150,000 coverage limit was appropriate.

¶ 6.   In July 2002 the Averys met with Diedrich to review the various coverages they had purchased through him. Such meetings occurred on an annual basis. At the meeting, the Averys asked Diedrich to increase the coverage limit on the Orchard property from $150,000 to at least $250,000. Based on their experience building a home, the Averys believed that the property was worth $250,000 or more.

¶ 7.   Diedrich disagreed that a $100,000 coverage increase was justified based on the value of the Orchard property. He thought the cost to replace the property would not exceed the existing level of coverage. Diedrich also thought that a $100,000 coverage increase would be suspicious to the insurance company.

¶ 8.   The Averys and Diedrich failed to reach an agreement on whether Diedrich would procure additional insurance coverage for the Orchard property. The idea of having an independent valuation of the property done came up as a means of resolving the disagreement. The Averys planned to contact an independent contractor that had been involved in building their residence to get such appraisal. In the meantime, the property continued to be insured at the $150,000 level.

¶ 9.   In the weeks following the meeting, Diedrich sent the Averys a letter summarizing what they had discussed. Specifically, the letter noted that the Averys planned on contacting a contractor to evaluate the property and determine whether the increased insurance coverage was justified.

¶ 10. The Averys' independent contractor examined the property and determined that the coverage limit should be at least $250,000. The contractor's assessment was given to the Averys verbally, but they never got a written estimate of the property's value. Neither the Averys nor the contractor contacted Diedrich to inform him of the verbal estimate of the property's value. The Averys had no further contact with Diedrich regarding the increase of their insurance coverage on the Orchard property after the July 2002 meeting and the receipt of his follow-up letter. The Averys also did not attempt to get increased coverage for the property through another agent or insurance company.

¶ 11. In September 2002 a fire destroyed the Orchard property. The Averys allege that cost of replacing the residence on the property exceeded $250,000.

¶ 12. In January 2004 the Averys filed suit against Diedrich, Westport, and Auto-Owners Insurance Company. The complaint alleged that Diedrich was negligent for failing to procure the increased coverage for the Orchard property that the Averys had requested. The complaint named Westport as a defendant because it insured Diedrich against the type of liability alleged by the Averys. The complaint named Auto-Owners Insurance Company as a defendant because it had issued the $150,000 policy for the Orchard property. The parties eventually stipulated to dismiss with prejudice the claims against Auto-Owners Insurance Company.

¶ 13. During discovery, Diedrich and the Averys were deposed. The attorney for Diedrich and Westport, Mark S. Nelson, and Mary Avery had the following exchange during her deposition:

M. Avery: [W]hen we told [Diedrich] we wanted additional insurance, he did not respond favorably to our request.

Nelson: And he said, I'm not going to do it; is that what you are saying?

M. Avery: He said, I don't believe the property is worth that much, based on my opinion.

Nelson: And so when you left that meeting, you knew that there was $150,000 worth of coverage on the property, correct?

M. Avery: Correct.

Nelson: And you knew that Drew Diedrich was not going to in the near future increase that, absent hearing back from you, correct?

M. Avery: Correct.

Nelson: You knew that it was your responsibility to contact [a contractor] to find out what his opinion was with respect to the value or the replacement cost of the Orchard property, correct?

M. Avery: I was annoyed because I've always felt that an insurance agent should help its clients by following up on such things. It seemed odd to me that the ball was in my court on that.

Nelson: But you understood when you left that the ball was in your court, correct?

M. Avery: Yes, yes.

Nelson and Thomas Avery had the following exchange during his deposition:

Nelson: Drew Diedrich did not, according to you, agree to increase the policy limits to 250–, did he?

T. Avery: No, he did not.

Nelson: Did you ask him to do it?

T. Avery: Yes.

Nelson: And according to you then he refused to do it, right?

T. Avery: That's correct.

Nelson: And he, according to you, refused to do it on that day, in that meeting, right?

T. Avery: That is correct.

Nelson: And so that you knew immediately during the meeting he wasn't going to increase them, correct?

T. Avery: Yes.

Nelson: And you left the meeting with that understanding, correct?

T. Avery: Yes.

Nelson: And that was your continuous understanding until even after the fire, correct?

T. Avery: That is correct.

Nelson: And was it you or your wife who contacted [the contractor]?

T. Avery: I believe Mary did.

. . . .

Nelson: And did she go out to the site, to the Orchard property, before the fire, with [the contractor]?

T. Avery: We both did.

701

¶ 14. Diedrich and Westport moved for summary judgment on the ground that Diedrich had no duty to obtain additional coverage for the Averys because he never agreed to obtain the additional coverage. The circuit court denied the motion, concluding that Diedrich, as an insurance agent, had a duty to carry out the Averys' instructions. The circuit court made its decision based on *Lisa's Style Shop, Inc. v. Hagen Insurance Agency, Inc.,* 181 Wis. 2d 565, 511 N.W.2d 849 (1994); *Nelson v. Davidson,* 155 Wis. 2d 674, 456 N.W.2d 343 (1990); *Appleton Chinese Food Service, Inc. v. Murken Insurance, Inc.,* 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994); and *Meyer v. Norgaard,* 160 Wis. 2d 794, 467 N.W.2d 141 (Ct. App. 1991). It noted that prior Wisconsin cases had defined an insurance agent's duty relative to an insured's responsibilities. It concluded that once an insured had decided on the coverage he or she desired, the agent had a duty to carry out the insured's instructions.

¶ 15. Diedrich and Westport filed a petition for leave to appeal a non-final order pursuant to Wis. Stat. § 808.03(2) (2005–06),[2] which the Averys opposed. The court of appeals granted the petition for leave, concluding that the § 808.03(2) criteria were satisfied in this case.

---

[2] Wisconsin Stat. § 808.03(2) provides the following:

APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

(b) Protect the petitioner from substantial or irreparable injury; or

(c) Clarify an issue of general importance in the administration of justice.

¶ 16. The court of appeals reversed the circuit court's denial of the motion for summary judgment made by Diedrich and Westport. Based on the same cases that the circuit court relied upon, the court of appeals concluded that Diedrich had no duty to obtain the increased insurance coverage because there was never an agreement that he would. Because Diedrich agreed to procure only the original policy and not the additional coverage, he was not bound to carry out the Averys' request for additional coverage.

¶ 17. The Averys petitioned for review with this court, which we granted.

II

■■■■■

¶ 18. We review a circuit court's grant or denial of summary judgment independently of the circuit court or court of appeals, applying the same methodology as the circuit court. *AKG Real Estate, LLC v. Kosterman,* 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Summary judgment materials, including pleadings, depositions, answers to interrogatories, and admissions on file, are viewed in the light most favorable to the nonmoving party. *Rainbow Country Rentals v. Ameritech Publ'g,* 2005 WI 153, ¶ 13, 286 Wis. 2d 170, 706 N.W.2d 95.

¶ 19. For purposes of the motion for summary judgment made by Diedrich and Westport, there is no genuine issue of material fact. Diedrich and Westport

All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise stated.

703

have stipulated to the Averys' version of the facts for the purposes of their motion.

¶ 20. The motion for summary judgment in this case also presents a question of law. The Averys brought a negligence claim. To prevail, they would need to prove four elements: "(1) a duty on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Nelson,* 155 Wis. 2d at 679. Diedrich and Westport moved for summary judgment based on an absence of any duty for an agent to procure requested coverage until the agent has agreed to procure it. Whether such a duty existed presents a question of law. *Id.*

### III

¶ 21. In this case, we address the following question: If an insured requests an increase in insurance coverage and the insurance agent has not agreed to procure it, does the agent have a duty to procure it?

¶ 22. Numerous cases have addressed the scope of an insurance agent's duty to an insured. Although none resolved the issue presented in this case, they do provide a framework in which to consider the agent's duty to procure coverage.

¶ 23. An insurance agent has a duty to " 'exercise reasonable skill and diligence in the transaction of the business entrusted to him [or her].' " *Master Plumbers Ltd. Mut. Liab. Co. v. Cormany & Bird, Inc.,* 79 Wis. 2d 308, 313, 255 N.W.2d 533 (1977). Agency law does not insulate an insurance agent from liability for his or her torts. *Schurmann v. Neau,* 2001 WI App 4, ¶ 9, 240

Wis. 2d 719, 624 N.W.2d 157 (citing *Ford v. Wisconsin Real Estate Examining Bd.,* 48 Wis. 2d 91, 102, 179 N.W.2d 786 (1970)). When an insurance agent fails to act with reasonable care, skill, and diligence in procuring coverage he or she agreed to procure, the agent has breached his or her duty to the insured. *Appleton Chinese,* 185 Wis. 2d at 805.

¶ 24. In *Appleton Chinese,* the insureds requested $140,000 replacement cost coverage on their restaurant and lost business income coverage. The insurance agent agreed to procure the requested coverage and prepared applications to various insurers. Because of a clerical error by the insurance agent, the applications that the insureds selected from did not include any lost business coverage. Once the insureds had selected an insurer, the insurance agent also agreed to the policy being written at actual cash value, rather than as replacement cost coverage, without consulting the insureds. The agent failed to ever make the insureds aware that the policy had been written at actual cash value. As a result of the insurance agent's conduct, rather than having $140,000 in replacement cost coverage and lost business income coverage, the insureds ended up with a policy that provided $140,000 in actual cash value coverage.

¶ 25. The court concluded that the insurance agent had breached her duty to act with reasonable skill and diligence in procuring the coverage she had agreed to procure for the insureds. *Id.* at 810. In reaching its conclusion, the court recognized that "[t]he principal-agent relationship may not rise to the level of a duty to advise, but it certainly extends to an independent duty to act with reasonable care, skill and diligence in procuring the agreed upon coverage." *Id.* at 805.

¶ 26. In addition to establishing when an insurance agent has a duty, prior cases have also "recognized

that, absent special circumstances, an insurance agent's duty to an insured is limited." *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 547, 514 N.W.2d 1 (1994). For instance, in *Nelson,* the insured alleged that an insurance agent had negligently failed to adequately inform them of the availability of underinsured motorist (UIM) coverage. The court concluded that "an insurance agent has no affirmative duty under existing Wisconsin law, absent special circumstances, to inform an insured concerning the availability or advisability of UIM coverage." *Nelson,* 155 Wis. 2d at 685.[3]

¶ 27.   Special circumstances exist when something more than a standard insured-insurer relationship exists, such as an express agreement that an agent will advise the insured about his or her coverage. *Id.* at 683. Special circumstances may also arise if an insured pays the agent compensation for his or her advice, an insured has entrusted the agent to an extent that the agent appreciates that he or she has an enhanced duty of providing advice, or the insured relies on advice after an agent held himself or herself out as a highly skilled insurance expert. *Id.* at 683–84.

¶ 28.   Courts have also concluded that in the absence of special circumstances insurance agents do not have a duty to "inform about or recommend policy limits higher than those selected by the insured," *Meyer,* 160 Wis. 2d at 798; "update the contents limit of the [insureds'] policy or to advise them regarding the ad-

---

[3] In the years following the court's decision in *Nelson v. Davidson,* 155 Wis. 2d 674, 456 N.W.2d 343 (1990), the legislature enacted 1995 Wisconsin Act 21, which created Wis. Stat. § 632.32(4m). Wisconsin Stat. § 632.32(4m) requires that insurers give the insured notice about the availability of underinsured motorist coverage.

equacy of coverage," *Lenz Sales & Service, Inc. v. Wilson Mut. Ins. Co.*, 175 Wis. 2d 249, 254, 499 N.W.2d 229 (Ct. App. 1993); "advise [the insured] to increase the limits of its insurance coverage for personal property," *Lisa's Style Shop,* 181 Wis. 2d at 567; or "anticipate what liabilities an insured may expect a policy to cover or to identify which exclusions in a policy an insured may deem important," *Sprangers,* 182 Wis. 2d at 547.

¶ 29.  Adhering to the underlying principles of the other cases related to the duty of insurance agents, we conclude that an insurance agent does not have a duty to procure requested insurance coverage until there is an agreement that the agent will do so.

¶ 30.  In this case, it is undisputed that there was not an agreement that Diedrich would procure the $100,000 increase in coverage for the Averys. During the July 2002 meeting and in the follow-up letter, Diedrich made clear that he was not procuring the additional coverage unless the Averys provided him with another estimate of the Orchard property's value.

¶ 31.  Both the Averys, during their depositions, recognized that Diedrich had not agreed to procure the coverage they had requested at the July 2002 meeting. They also articulated their belief that Diedrich was not going to procure the increased coverage until he heard back from them with a new appraisal of the Orchard property. Although the Averys received an estimate that would have supported the increase in coverage, they never gave Diedrich that information. The necessary agreement could not have occurred until Diedrich and the Averys agreed that Diedrich would procure the $100,000 increase in coverage. Such an agreement

never occurred. Accordingly, we conclude that Diedrich did not have a duty to procure the requested increase in coverage.

¶ 32. The Averys contend that an insurance agent who has agreed to procure coverage for a property has a duty to procure any requested increase in coverage for that given property. Such a duty arises, according to the Averys, because agents are obligated to carry out an insured's instructions once the insured has made a decision about his or her insurance needs.

¶ 33. We reject the Averys' proposed rule. Such a rule would permit an insured to unilaterally impose a duty on an insurance agent once the agent has agreed to provide any coverage for a property. There are not any Wisconsin cases that recognize that an insurance agent could have a duty imposed unilaterally. Contrary to the Averys' suggestion, the *Appleton Chinese* insurance agent breached her duty because of her negligence after she had agreed to procure the requested coverage. *Appleton Chinese,* 185 Wis. 2d at 805. The *Appleton Chinese* court recognized that "[t]he principal-agent relationship may not rise to the level of a duty to advise, but it certainly extends to an independent duty to act with reasonable care, skill and diligence in procuring *the agreed upon* coverage." *Id.* (emphasis added). Permitting unilateral changes to the principle-agent relationship is inconsistent with the principles previously articulated by Wisconsin courts. *E.g., Nelson,* 155 Wis. 2d at 684.

¶ 34. Our conclusion in this case is consistent with those reached in other jurisdictions that have considered the issue presented in this case. Specifically, other jurisdictions have concluded that an insurance agent's duty in the context of procuring coverage arises when he or she has agreed to procure the requested

coverage. *R.H. Grover, Inc. v. Flynn Ins. Co.,* 777 P.2d 338, 341 (Mont. 1989); *Baldwin v. Lititz Mut. Ins. Co.,* 393 S.E.2d 306, 308 (N.C. Ct. App. 1990).

¶ 35. In addition to other jurisdictions reaching the same conclusion, treatises support our position. *Couch on Insurance* states the following:

> [a]n insurance agent is not obligated to assume the duty of procuring a policy of insurance for a customer, but if the agent, with a view to compensation for his or her services, undertakes to procure insurance for a customer and fails to do so, the insurance agent will be held liable for any damage resulting therefrom.

3 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 46:46 (3d ed. 2005). Like our conclusion in this case, *Couch on Insurance* provides that an insurance agent does not have a duty to procure requested insurance coverage. Another treatise states that an insurance agent owes the insured no duty until the agent "agrees to undertake a particular task." Clarance E. Hagglund et al., *Insurance Producer Liability: In Plain Language* 17 (1991). After an insurance agent "agrees to procure insurance, [his or her] duties are limited to (1) following the [insured's] coverage instructions with reasonable care, and (2) not intentionally or negligently misrepresenting the scope of coverage." *Id.* (footnotes omitted). These treatises support our holding that an insurance agent does not have a duty to procure requested insurance coverage until there is an agreement that the agent will do so.

## IV

¶ 36. In sum, we hold that an insurance agent does not have a duty to procure requested insurance coverage until there is an agreement that the agent will

do so. In this case, Diedrich did not have a duty to procure the $100,000 increase in insurance coverage requested by the Averys because he never agreed to procure the increased coverage. There was no genuine issue of material fact and Diedrich and Westport were entitled to judgment as a matter of law. Accordingly, summary judgment for Diedrich and Westport was appropriate.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 37. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The court phrases the question presented as follows: "If an insured requests an increase in insurance coverage and the insurance agent has not agreed to procure it, does the agent have a duty to procure it?" Majority op., ¶ 2. The majority opinion answers this easy question "No." Majority op., ¶ 2. I agree with the answer to the question posed.

¶ 38. Nevertheless, I am concerned because, in my opinion, the facts and parties present a more nuanced question than the one the majority opinion answers. In my opinion, the following question is presented by the instant case: If an insured and insurance agent have a pre-existing relationship and a course of past dealing, and if the insured asks the agent to procure increased insurance coverage on an existing insurance policy and the agent explicitly refuses to procure the requested increased insurance coverage but their relationship continues, is the insurance agent liable to the insured when a loss occurs in excess of the policy coverage? The majority opinion does not answer this question.

¶ 39. According to the court of appeals, an insurance agent's duty to the insured includes a duty to act

with reasonable care, skill, and diligence in procuring the agreed-upon coverage and a duty to act in good faith and follow the insured's direction. *Avery v. Diedrich,* 2006 WI App 144, ¶¶ 9, 11, 294 Wis. 2d 769, 720 N.W.2d 103. In the present case, no increased coverage was agreed upon between the insurance agent and the insured. Because the insurance agent explicitly advised the insured that the agent would not follow the insured's direction, would not procure the requested increased coverage, and did not accept the obligation to procure the increased coverage, the insurance agent was not liable for failing to procure the increased coverage, according to the court of appeals. *Avery,* 294 Wis. 2d 769, ¶¶ 10, 12.

¶ 40. The circuit court viewed the case differently and denied the insurance agent's motion for summary judgment.[1] The circuit court recognized that unless "special circumstances" exist, an insurance agent has limited duties to the insured. For example, absent special circumstances, an insurance agent ordinarily does not have the duty to advise the insured regarding available insurance. What constitutes special circumstances has been addressed by this court in *Nelson v. Davidson,* 155 Wis. 2d 674, 456 N.W.2d 343 (1990). The circuit court concluded as a matter of law that no special relationship existed between the insured and the insurance agent in the present case. Neither party argues in this court that the relationship between the insured and the agent amounted to special circumstances.

¶ 41. The circuit court, however, also recognized that insureds have the burden to know their insurance needs and the value of their property, and to communi-

---

[1] Fond du Lac County Circuit Court, Dale L. English, Judge.

711

cate requests for coverage to their insurance agents. The insurance agent's duty in the present case, according to the circuit court, was to follow the insured's instructions, which included at a minimum presenting the insured's request to the insurance company and allowing the company to decide whether to write the requested increased coverage. Because the insurance agent failed to honor the insured's request by not forwarding the request to the insurance company, the insurance agent may be liable for breach of the duty under the circuit court's decision.

¶ 42. The instant case presents, in my opinion, the question of the scope of an insurance agent's duty when the parties have a pre-existing relationship and a course of dealing with each other. To reach a decision on the question I framed, a court would have to address, in my opinion, the following arguments (among others) raised in the present case: (1) Did the pre-existing relationship impose a duty on the agent to adhere to the insured's request for increased coverage or at least to forward the request to the insurance company? (2) Was the insurance agent a dual agent, that is, an agent for both the insured and the insurance company, and how does a dual agency affect the relationship between the insured and the agent and the agent's obligations in the present case? (3) If the insurance agent refuses to follow the insureds' instructions, must the insurance agent terminate the agency relationship? (4) Do judicial public policy factors limit or expand the insurance agent's liability in the present case?

¶ 43. The majority opinion perhaps will be interpreted as supplying a "No" answer to the question I framed. Or perhaps the majority opinion will be interpreted as not grappling with the actual fact situation underlying the present case. In that event, the question

raised by the facts of the present case probably remains unanswered in Wisconsin law and will have to await a definitive answer from this court on another day.

¶ 44. For the reasons set forth, I write separately.

¶ 45. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this opinion.