COURT OF APPEALS
DECISION
DATED AND FILED

February 15, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP642**

STATE OF WISCONSIN

Cir. Ct. No.  2019CV124

IN COURT OF APPEALS
DISTRICT III

SEDGELEY FARM, INC., LARRY BJORK AND LUCY BJORK,

PLAINTIFFS-APPELLANTS,

V.

MT. MORRIS MUTUAL INSURANCE COMPANY, KADO & ASSOCIATES AND AMERICAN ALTERNATIVE INSURANCE CORPORATION,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dunn County: EMILY M. LONG, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM.  Sedgeley Farm, Inc., Larry Bjork, and Lucy Bjork (collectively, "Sedgeley Farm") appeal a grant of summary judgment in favor of Mt. Morris Mutual Insurance Company, Kado & Associates ("Kado"), and Kado's insurer, American Alternative Insurance Corporation.  The circuit court determined that an insurance policy Mt. Morris issued to Sedgeley Farm was unambiguous and did not provide coverage for a hay shed barn on Sedgeley Farm's property.  The court further determined, based upon the undisputed facts, that Sedgeley Farm could not prevail on its claim that Kado negligently failed to procure an insurance policy that provided coverage for the hay shed barn.  We conclude the court properly granted summary judgment on both of Sedgeley Farm's claims, and we therefore affirm.

## BACKGROUND

¶2  Sedgeley Farm is owned and operated by Larry and Lucy Bjork.  Prior to July 2010, Sedgeley Farm had a farmowner's insurance policy through Wisconsin Mutual Insurance Company.  The Wisconsin Mutual policy covered four buildings on the farm premises, which were described on the policy's declarations page as follows:  (1) "machine shed"; (2) "36X50 barn"; (3) "loafing barn"; and (4) "16 X 32 horse barn."  It is undisputed that the farm contained other buildings that were not covered by the Wisconsin Mutual policy.

¶3  Sometime in 2010, Larry Bjork contacted Kado, an insurance agency, about procuring a different insurance policy for Sedgeley Farm.  Kado subsequently obtained a farmowner's policy for Sedgeley Farm from Mt. Morris, with an initial policy period from July 27, 2010, to July 27, 2011.  Thereafter, Sedgeley Farm renewed the Mt. Morris policy on an annual basis.  This appeal involves the policy period from July 27, 2017, to July 27, 2018.

¶4    Under "Coverage E – Farm Barns, Buildings, and Structures," the Mt. Morris policy provides an initial grant of coverage for "additional farm dwellings, farm barns, farm buildings, portable buildings and structures, tenant's improvements and betterments, and other structures located on the 'insured premises' for which a 'limit' is shown on the 'declarations.'" The policy further provides that Mt. Morris "insure[s] against direct physical loss to property covered under Coverage[] E" that is caused by fire.

¶5    The policy's declarations page includes a "Schedule of Barns, Buildings, Structures and Additional Farm Buildings – Coverage E" (hereinafter, "the Schedule"). The Schedule states: "'We' cover only the following classes or items of property for which a specific limit is shown. 'Our' Liability shall not exceed such limit." The Schedule then lists four limits of liability, each of which is accompanied by a "description." The four descriptions are as follows: (1) "Barns (Type 2) Dimensions: 36X50"; (2) "Machine Shed (Type 1) … Dimensions: 32X78"; (3) "Horse Shed (Type 1) … Dimensions: 16X32"; and (4) "Loafing Shed (Type 1) … Dimensions: 16X40." The "Type 1" and "Type 2" designations signified the conditions of the buildings for purposes of determining the premiums to be charged. Like the Wisconsin Mutual policy, it is undisputed that the Mt. Morris policy did not cover every building on Sedgeley Farm's premises.

¶6    On October 28, 2017, a fire destroyed a structure on Sedgeley Farm's property that is variously referred to in the record as a "hay shed barn," a "hay shed," a "hay barn," and a "detached garage." Mt. Morris denied coverage for the loss of the hay shed barn on the basis that it was not one of the structures listed on the Schedule.

3

¶7     In May 2019, Sedgeley Farm commenced the instant lawsuit against Mt. Morris, Kado, and Kado's insurer.[1]  Sedgeley Farm asserted that the hay shed barn was covered by the Mt. Morris policy, and that Mt. Morris had therefore breached the parties' contract by denying coverage for the loss of that building.[2]  Alternatively, in the event the circuit court determined that the Mt. Morris policy did not cover the loss of the hay shed barn, Sedgeley Farm asserted that Kado was negligent by failing to procure an insurance policy that provided that coverage.

¶8     Mt. Morris and Kado moved for summary judgment, and the circuit court ultimately granted both motions in an oral ruling.  The court concluded that the Mt. Morris policy was unambiguous and did not provide coverage for the loss of the hay shed barn.  The court reasoned that although the Schedule used the plural term "barns" when describing one of the categories of covered structures, only one set of dimensions was listed for that category—"a 36 by 50 building."  Because those dimensions did not correspond to the dimensions of the hay shed barn, the court stated the hay shed barn "clearly … is not the same building that is listed on the schedule of buildings that were included in the insurance."  The court further reasoned that Sedgeley Farm had "presumably benefited from the fact that they weren't paying a premium on that building, and they should not now benefit from that."

---

[1] For the remainder of this opinion, when we discuss arguments made or actions taken during this litigation by Kado and its insurer, we refer to them collectively as "Kado."

[2] In the alternative, Sedgeley Farm asserted a claim against Mt. Morris for reformation of the policy based on a mutual mistake as to whether the policy provided coverage for the hay shed barn.  Sedgeley Farm later withdrew that claim, however, and we therefore do not address it further.

¶9     The circuit court also concluded there was "no dispute that the Bjorks asked for the same coverage they had with [Wisconsin Mutual,] and that's what Kado provided." The court stated Sedgeley Farm had a duty to review the Mt. Morris policy, which unambiguously did not cover the hay shed barn. The court therefore reasoned that Sedgeley Farm "should have been on notice" that the hay shed barn was not covered. As such, the court determined, as a matter of law, that Sedgeley Farm could not prevail on its negligence claim against Kado. Sedgeley Farm now appeals.

## DISCUSSION

### I.  Breach of contract claim against Mt. Morris

¶10     We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2019-20).

¶11     In this case, the circuit court determined that Mt. Morris was entitled to summary judgment on Sedgeley Farm's breach of contract claim because the unambiguous language of the Mt. Morris policy showed that the policy did not provide coverage for the loss of the hay shed barn. The interpretation of an insurance policy presents a question of law that we review independently. *Danbeck v. American Fam. Mut. Ins. Co.*, 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150. "An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it." *Id.* We

5

therefore give the words in an insurance policy their common and ordinary meaning, and where the policy language is plain and unambiguous, we enforce it as written without resort to rules of construction. *Id.* "We do not construe policy language to cover risks that the insurer did not contemplate or underwrite and for which it has not received a premium." ***Estate of Sustache v. American Fam. Mut. Ins. Co.***, 2008 WI 87, ¶19, 311 Wis. 2d 548, 751 N.W.2d 845.

¶12 If an insurance policy is ambiguous, however, we construe the policy language in favor of coverage. ***Danbeck***, 245 Wis. 2d 186, ¶10. Policy language is ambiguous when it is susceptible to more than one reasonable interpretation. *Id.* Whether policy language is ambiguous presents a question of law for our independent review. ***Janssen v. State Farm Mut. Auto. Ins. Co.***, 2003 WI App 183, ¶6, 266 Wis. 2d 430, 668 N.W.2d 820.

¶13 Sedgeley Farm argues the Mt. Morris policy is ambiguous as to whether it provides coverage for the hay shed barn because the Schedule uses the plural term "barns" when listing the covered buildings. Sedgeley Farm asserts that the use of the plural term "barns" led it to believe that multiple barns were covered by the policy—specifically, the hay shed barn and another structure on the property known as the "old dairy barn." Sedgeley Farm argues that if Mt. Morris had intended the policy to cover only the old dairy barn, it should have used the singular term "barn" or a more descriptive designation, such as "old dairy barn," when listing the covered structures. Alternatively, Sedgeley Farm asserts that Mt. Morris could have included a definition of the term "barns" in the policy that clarified which structures that term was meant to encompass. Because Mt. Morris did not do so, Sedgeley Farm contends we must apply the common and ordinary meaning of the plural term "barns," which "mean[s] more than one."

¶14 We reject Sedgeley Farm's argument because it improperly reads the term "barns" in isolation, without regard for the surrounding policy language. "Provisions in an insurance policy should not be read in isolation, but rather should be read in the context of the policy as a whole." *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶25, 325 Wis. 2d 176, 784 N.W.2d 579. Although the Schedule uses the plural term "barns" as the "description" associated with the first "limit of liability" shown on the Schedule, underneath the word "barns" a single set of dimensions is provided—"36X50." The listing of a single set of dimensions would have alerted a reasonable insured that the term "barns" included only one structure. Moreover, it is undisputed that the dimensions listed underneath the term "barns" do not correspond to the dimensions of the hay shed barn. Under these circumstances, a reasonable insured would have concluded that the hay shed barn was not one of the structures covered by the Mt. Morris policy.

¶15 In addition, we agree with Mt. Morris that if the plural term "barns" included every barn on Sedgeley Farm's property, then the dimensions listed underneath that term would be superfluous. Stated differently, if the use of the plural term "barns" signified that every barn on the property was covered, it would not have been necessary to list the dimensions of one particular barn. Where possible, we avoid interpretations that render policy language superfluous. *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 263, 371 N.W.2d 392 (Ct. App. 1985).

¶16 Sedgeley Farm asserts that both Larry and Lucy Bjork reviewed the Mt. Morris policy prior to the fire and believed the plural term "barns" meant that both the old dairy barn and the hay shed barn were covered. Sedgeley Farm also cites Larry's deposition testimony that during a May 2017 inspection of Sedgeley Farm's property, an adjuster from Mt. Morris took pictures of and paid particular

attention to the hay shed barn. Sedgeley Farm contends that based on the adjuster's actions, Larry "presum[ed]" that the hay shed barn "was one of the buildings covered" by the Mt. Morris policy.

¶17    These arguments fail because we apply an objective standard when interpreting an insurance policy, asking what a reasonable person in the insured's position would have understood the policy to mean. *See **Danbeck***, 245 Wis. 2d 186, ¶10. Any subjective belief by the Bjorks that the Mt. Morris policy covered the hay shed barn is not relevant, in the face of the unambiguous policy language showing that the hay shed barn is not covered.

¶18    Sedgeley Farm also emphasizes that when Mt. Morris's adjuster inspected the farm premises in May 2017 and took measurements of various buildings, no structure that the adjuster measured matched the "36X50" dimensions listed under the term "barns" on the Schedule. Sedgeley Farm argues this discrepancy rendered the policy ambiguous as to which structure or structures were included within the term "barns."

¶19    We disagree, for two reasons. First, regardless of whether the dimensions listed on the Schedule matched any other building on Sedgeley Farm's property, it is undisputed that the dimensions did not match the hay shed barn, which Mt. Morris measured as having dimensions of twenty-six feet by thirty feet. Second, during the 2017 inspection, Mt. Morris measured the old dairy barn as having dimensions of thirty-four feet by forty-eight feet—which is only two feet off in each direction from the dimensions listed under "barns" on the Schedule. Under these circumstances, a reasonable insured would not have concluded that the dimensions listed on the Schedule referred to the hay shed barn.

¶20 Finally, Sedgeley Farm argues an email that Mt. Morris sent to Kado in June 2017 shows that "Mt. Morris itself was uncertain as to what structures were covered under its own policy at the time of the July renewal—just three months before the fire." Sedgeley Farm argues that in light of Mt. Morris's own "uncertainty or confusion" as to which buildings were covered, its current claim that the policy was not ambiguous is "illogical."

¶21 We reject this argument because the email in question clearly shows that Mt. Morris understood that its policy did not cover the hay shed barn. In the email, a Mt. Morris employee expressly stated, "On the policy we have 4 buildings that we are insuring." After raising questions about several other buildings on the property, the Mt. Morris employee asked, "There is a detached garage 26x30 on the inspection *that we are not insuring*. Should we be adding this to the policy?" (Emphasis added.) It is undisputed that the "detached garage" referenced in the email is the hay shed barn. As such, the email clearly shows that as of June 2017, Mt. Morris understood, without any confusion or uncertainty, that the term "barns" in its policy did not include the hay shed barn, and that its policy therefore did not cover the hay shed barn.

¶22 For all of the reasons explained above, we reject Sedgeley Farm's claim that the Mt. Morris policy is ambiguous with respect to whether the hay shed barn is a covered structure. Based on the unambiguous policy language, a reasonable insured would have understood that the policy did not provide coverage for the hay shed barn. We therefore affirm the circuit court's decision granting summary judgment in favor of Mt. Morris on Sedgeley Farm's breach of contract claim.

## II. Negligence claim against Kado

¶23     Sedgeley Farm next argues that the circuit court erred by granting Kado summary judgment on Sedgeley Farm's claim that Kado negligently failed to procure an insurance policy that provided coverage for the hay shed barn. To prevail on its negligence claim, Sedgeley Farm would need to prove four elements: (1) a duty on the part of Kado; (2) a breach of that duty; (3) a causal connection between Kado's conduct and Sedgeley Farm's injury; and (4) actual loss or damage. *See Avery v. Diedrich*, 2007 WI 80, ¶20, 301 Wis. 2d 693, 734 N.W.2d 159.

¶24     An insurance agent has a duty to exercise reasonable skill and diligence in the transaction of the business entrusted to the agent. *Id.*, ¶23. As such, the agent "must use reasonable skill and diligence to put into effect the insurance coverage requested by his or her policy holder." *Appleton Chinese Food Serv., Inc. v. Murken Ins., Inc.*, 185 Wis. 2d 791, 803 n.4, 519 N.W.2d 674 (Ct. App. 1994) (citation omitted). "When an insurance agent fails to act with reasonable care, skill, and diligence in procuring coverage he or she agreed to procure, the agent has breached his or her duty to the insured." *Avery*, 301 Wis. 2d 693, ¶23.

¶25     Absent "special circumstances," however, an insurance agent's duty to an insured is limited. *Id.*, ¶26 (citation omitted). For instance, Wisconsin cases have held that without special circumstances, an insurance agent has no duty to:

> "inform about or recommend policy limits higher than those selected by the insured," "update the contents limit of the [insureds'] policy or to advise them regarding the adequacy of coverage," "advise [the insured] to increase the limits of its insurance coverage for personal property," or "anticipate what liabilities an insured may expect a

10

> policy to cover or to identify which exclusions in a policy
> an insured may deem important.

*Id.*, ¶28 (citations omitted).  Stated differently, without special circumstances, an insurance agent "does not have an affirmative duty to advise a client regarding the availability or adequacy of coverage." *Nelson v. Davidson*, 155 Wis. 2d 674, 682, 456 N.W.2d 343 (1990).

¶26  "Special circumstances exist when something more than a standard insured-insurer relationship exists, such as an express agreement that an agent will advise the insured about his or her coverage." *Avery*, 301 Wis. 2d 693, ¶27. Special circumstances may also be present if an insured pays the insurance agent compensation for his or her advice, if the insured has entrusted the agent to an extent that the agent appreciates that he or she has an enhanced duty of providing advice, or if the insured relies on the agent's advice after the agent held him- or herself out as a highly skilled insurance expert.  *Id.*

¶27  Sedgeley Farm does not argue that special circumstances exist in this case.  Absent special circumstances, we conclude Kado was entitled to summary judgment on Sedgeley Farm's negligence claim because the undisputed facts show that Kado did not have a duty to procure a policy that included coverage for the hay shed barn, or a duty to advise Sedgeley Farm about the availability of such coverage.

¶28  Instead, Kado had a duty to procure an insurance policy that provided the coverage requested by Sedgeley Farm. *See Appleton Chinese Food*, 185 Wis. 2d at 803 n.4.  Larry Bjork expressly testified during his deposition that he asked Kado to procure a policy for Sedgeley Farm that provided the same coverage as Sedgeley Farm's prior policy from Wisconsin Mutual.  As noted

above, the Wisconsin Mutual policy provided coverage for four buildings: (1) a "machine shed"; (2) a "36X50 barn"; (3) a "loafing barn"; and (4) a "16 X 32 horse barn." The Mt. Morris policy that Kado obtained for Sedgeley Farm provided coverage for the same four structures. The undisputed facts therefore show that Kado fulfilled its duty to Sedgeley Farm by obtaining a policy that provided the coverage Sedgeley Farm had requested. Absent a specific request from Sedgeley Farm, Kado had no additional duty to procure a policy that also provided coverage for the hay shed barn. Moreover, Kado had no duty to advise Sedgeley Farm about the availability of coverage for the hay shed barn or about the wisdom of obtaining such coverage. *See Nelson*, 155 Wis. 2d at 682 (absent special circumstances, an insurance agent has no duty to advise the insured about the availability or adequacy of coverage).

¶29    Sedgeley Farm argues there is a genuine issue of material fact as to whether it requested coverage for the hay shed barn. According to Sedgeley Farm, Larry Bjork "maintains he believed he made himself clear to [Kado] that he wanted five essential buildings covered, which included the hay shed barn." Sedgeley Farm does not, however, cite any evidence supporting the proposition that Larry, or anyone else from Sedgeley Farm, made a specific request for coverage of the hay shed barn. Instead, Sedgeley Farm cites a portion of Larry's deposition testimony in which he asserted that he did not believe he had communicated with Gregg Kado (one of Kado's owners) "about adding other buildings for coverage … in October of 2010." That testimony does not show that Larry asked Kado to procure a policy that provided coverage for the hay shed barn.

¶30    Sedgeley Farm also asserts, based on Lucy Bjork's deposition testimony, that Larry "told [Lucy] that he was insuring the five buildings with

[Kado,] including the hay shed barn." What Larry may have told Lucy does not, however, show that Larry or anyone else told Kado that Sedgeley Farm wanted coverage for the hay shed barn. Simply put, evidence regarding the coverage that Sedgeley Farm's principals wanted, or the coverage that they believed Sedgeley Farm had, does not create a genuine issue of material fact as to what coverage they actually requested from Kado.

¶31 Sedgeley Farm further claims there is a genuine issue of material fact as to whether Gregg Kado followed his normal practices when procuring the Mt. Morris policy. During his deposition, Gregg Kado testified that when procuring an insurance policy for a farm in 2010, he would typically review the declarations page from the farm's prior policy in order to formulate an initial quote, and he would later go to the farm to take pictures and obtain measurements of the structures. Sedgeley Farm asserts there is a dispute of fact as to whether Gregg Kado followed these standard practices in the instant case.

¶32 Although there may be a dispute of fact as to whether Gregg Kado followed his standard practices when procuring the Mt. Morris policy, Sedgeley Farm has failed to show that any such factual dispute is *material*. A material fact is one that impacts the resolution of the controversy. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶32, 236 Wis. 2d 435, 613 N.W.2d 142. Here, Sedgeley Farm cites no authority in support of the proposition that Gregg Kado had a duty to follow his standard practices when obtaining insurance coverage for Sedgeley Farm. As explained above, under our case law, Kado instead had a duty to procure a policy that provided the coverage Sedgeley Farm had requested. Kado fulfilled that duty by procuring a policy that provided the same coverage as Sedgeley Farm's prior policy from Wisconsin Mutual. Under these circumstances, whether Gregg Kado followed his standard practices when

procuring the Mt. Morris policy is not material, as it has no impact on either the scope of Kado's duty to Sedgeley Farm or whether Kado breached that duty.

¶33    Sedgeley Farm also argues that Kado breached its duty to exercise reasonable skill and diligence when it failed to "follow up on" Mt. Morris's June 2017 email.  As discussed above, in that email, a Mt. Morris employee noted that the hay shed barn was not covered and asked, "Should we be adding this to the policy?"  Sedgeley Farm asserts that upon receipt of this email, Kado had a duty to inform Sedgeley Farm that the hay shed barn was not covered and to ask whether Sedgeley Farm wanted to obtain coverage for that structure.

¶34    We do not find this argument persuasive.  Again, the undisputed facts show that Sedgeley Farm asked Kado to procure a policy that provided the same coverage as its prior Wisconsin Mutual policy, which did not cover the hay shed barn.  When Mt. Morris later noted that the hay shed barn was not covered and asked whether it should be added to the policy, Kado could reasonably rely on Sedgeley Farm's earlier representation that it wanted the same coverage provided by the Wisconsin Mutual policy.

¶35    In addition, the copy of the email contained in the appellate record includes a handwritten notation by a Kado employee, Georgene Close, stating: "Spoke to [Lewis Bjork] about all this[.]  Will get back to me[.]"  During her deposition, Close testified that after she received the Mt. Morris email, she was unable to reach Larry Bjork, so she called his son Lewis, who was listed as an additional insured on the policy.  During that conversation, Close asked Lewis about adding coverage for the hay shed barn "because they have no insurance on it."  Lewis said that he would get back to her, but he did not do so.  We reject Sedgeley Farm's contention that, having contacted Lewis and inquired about

14

obtaining coverage for the hay shed barn, Kado had a duty to take further action to address that issue when neither Lewis nor anyone else from Sedgeley Farm responded to Kado's initial inquiry.

¶36 We therefore conclude, based upon the undisputed facts, that Kado did not have a duty to obtain an insurance policy for Sedgeley Farm that provided coverage for the hay shed barn, or a duty to advise Sedgeley Farm regarding the availability or desirability of such coverage. Accordingly, the circuit court properly granted summary judgment to Kado on Sedgeley Farm's negligence claim.[3]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

---

[3] Sedgeley Farm also argues that when granting summary judgment in favor of Kado, the circuit court "erroneously determined that Sedgeley Farm's claim was barred by its own review of the policy." We need not address this argument because we have already concluded, for the reasons explained above and upon our independent review, that Kado was entitled to summary judgment on Sedgeley Farm's negligence claim. We may affirm a grant of summary judgment on different grounds than those relied upon by the circuit court. *International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co.*, 2007 WI App 187, ¶23, 304 Wis. 2d 732, 738 N.W.2d 159.